## N. Y. SUPERIOR COURT.

CHARLES DEXHEIMER, administrator, plaintiff and respondent agt. CONRAD GAUTIER, defendant and appellant.

A *delivery as a free and voluntary gift* of money by a soldier, at or about the time of his enlistment into the army, constituting a portion of his bounty money, to a

friend, with directions to keep the same as a gift, in case of his·decease, does not constitute it a *donatio mortis causa.* (BARBOUR, J., *dissenting.*)

*General Term, January,* 1867.

ROBERTSON, Ch. J., *and* S. B. GARVIN *and* J. M. BARBOUR, *Justices.*

APPEAL by the defendant from·a judgment for plaintiff at special term.

STALLKNECHT & HALL, *for defendant, appellant.*
JOHN J. FREEDMAN, *for plaintiff, respondent.*

I. The defendant and appellant, at the trial, waiving all other points, proposed to rest his defense exclusively upon the ground that the gift set up in the answer was a *donatio mortis causa;* but his offer of proof was insufficient, in not showing that the gift was made by the donor:

1. In peril of death *at the* time it was made; and

2. With relation to his decease by *illness* affecting him *at the time* of the gift; and

3. That it was conditioned to take effect on the death of the donor by his *disorder then existing.*

These are essential to constitute a *donatio mortis causa,* and unless they all concur, there is no valid gift. (*Dayton on Surrog.* 3d. ed. pp. 262 *and* 263, *and cases there cited.*)

Courts do not uphold such gifts unless they are attended by all the requisites which the law requires. The policy of the law is against the encouragement of such gifts. (*Dayton on Surrog.* 3d ed. p. 266.)

The proof offered, on the contrary, showed that the money was bounty money, and was delivered by an able-bodied man to the appellant, at the time of his enlistment into the army of the United States, in 1864, after having successfully passed the examination made by the surgeon with regard to his health and bodily fitness, as prescribed by the United States laws.

II. The answer does not set up facts sufficients to consti-

tute a valid *donatio mortis causa*, and the appellant having failed at the trial to move for leave to amend his answer by setting up the necessary facts in this respect, he could not be permitted to give any evidence of them.

For the foregoing reasons, the order denying the motion for a new trial, and the judgment entered in this action, should be affirmed.

*By the court*, ROBERTSON, Ch. J. The only defense which the answer in. this case sets up is, that the intestate (Jacob Dexheimer), of whose estate the plaintiff is administrator, gave the sum sued for to the defendant, in case of the death of the former at any time, without reference to any specific imminent peril. The defendant's counsel offered on the trial to prove that the gift was one "*mortis causa*," and made "about the time the intestate went to *the war*," and that he was "killed in *the war*," without having revoked it.

Thereupon, it being admitted that the money claimed was delivered to the defendant by the intestate, when he enlisted *in the army*, and was part of his bounty money, the court refused to receive such facts in evidence, and held that the facts stated in the answer did not constitute any defense, and directed a verdict for the plaintiff. To which refusal, decision and direction, exceptions were duly taken by the defendant.

Such a gift as that alleged in the answer was clearly either an absolute one, or void. Death by any casualty, at any time, did not render it a "*donatio mortis causa*," because it was inevitable. No case is to be found of a *donatio mortis causa*, unless by some imminent peril, and when that has passed away, the giver has a right to revoke it. It is immaterial whether such a gift be a conditional one, dependent upon the escape of the donor from impending peril, or a revocable one, dependent upon his death thereby, without any revocation, or whether the peril be confined to sickness, or may include the dangers of traveling, navigation or battle.

(*Just. Inst. Lib.* 2, 7; 2 *Kent's Com.* 444; *Dayton on Sur.* 3*d ed.* 262, 263.)

The evidence subsequently introduced by way of admission did not establish a gift at all. The answer, therefore, either did not contain a defense, or was unproved, and the direction to find a verdict for plaintiff was proper.

The judgment and order denying a new trial should be affirmed, with costs.

GARVIN, J., concurred.

BARBOUR, J., delivered the following *dissenting* opinion:

This action was brought to recover the sum of $625, alleged in the complaint to have belonged to the plaintiff's intestate, at the time of his being killed, in March, 1865, and to be unjustly detained from such plaintiff by the defendant. The answer avers that such intestate was, in August, 1864, the owner of such money, and then "made an actual, free, voluntary and valid gift of the same to the defendant, and delivered it to him, with a direction to him to keep the same, in case of the decease of the donor; that the said donor died without revoking such gift, and that thereby the defendant became the absolute owner of said money."

Upon the trial, the plaintiff's counsel waived a portion of the amount of his claim, and proved the interest on the remainder from the date of the demand; and the counsel for each of the respective parties thereupon admitted and agreed, in open court, "that the money referred to in the pleadings was delivered by Jacob Dexheimer, deceased, to the defendant, at or about the time of the said Jacob's enlistment into the army of the United States, and constituted a portion of his bounty money received by him at the time of his enlistment." The court excluded the evidence which was offered by the defendant's counsel, to prove the fact that the gift was made, as set forth in the answer, and directed the jury to find a verdict for the plaintiff.

As the funds delivered to the defendant were the bounty

moneys which had been paid to Jacob Dexheimer, upon his enlistment, we may assume that when such delivery was made, the latter was a soldier of the United States, and about to take his place in an army which was then employed in a most bloody war, a war in which probably fully one-fourth of all who were actually engaged in it laid down their lives. The enlistment, too, was at so late a period in the war that the hazards and dangers of the service were well understood and known by all, and it follows that it was in view of those hazards, and of the uncertainty of his ever returning alive to claim his money, that the same was delivered by the soldier to the defendant.

Why, then, was not the alleged gift, if made, a good and complete *donatio mortis causa?* Homer tell us that when Telemachus was about to engage in a conflict with the suitors of Penelope, he gave certain treasures, in case he should fall, to his friend Peirocus (*Odyssey B.* 17, 781), a case very similar to the one before us; and Sir William Blackstone says that was a very complete *donatio mortis causa.* (2 *Bl. Comm.* 514.) It is true the text in the *Commentaries* speaks of a gift of this character as a death bed disposition of property, as a delivery of goods by a person in his last sickness, to keep in case of his death. But the note of Sir William, above cited, shows he did not design to be understood as saying that such donations could be made only during a last sickness or upon the death bed of the donor, but merely as an instance, and the most common one.

Swinburne speaks of this class of donations as "those gifts which he made in *consideration of death.*" (*Swinb. part* 1, § 6, *p.* 4.) But he does not limit the power to make such gifts during a last sickness or upon the bed of death.

Chancellor KENT says it is essential to such gifts that the donor make them in his last sickness, or *in contemplation and expectation of death,* and that the *apprehension* of death may arise from infirmity or old age, or *from external and anticipated danger.* (2 *Kent's Comm.* 244.)

Bonner calls them gifts *in prospect* of death, and says such a gift must be made in *peril* of death, or during the donor's last illness, and to take effect only in case he dies. (1 *Bonn. Am. Law Jur.* 277.)

Mr. Burrell, after citing the definition of Blackstone as above, says such definition is too narrow, in so far as it confines this species of gift to cases of last illness, it being sufficient if the *apprehension* of death arise from other causes, as from *infirmity*, old age, or any external or anticipated danger. (*Burr. Law Dict. Don. Causa Mort.*) See further *Walter* agt. *Hodge* (2 *Swanst. R.* 97), where the donor, although not in perfect health, was not dangerously sick, but well enough to go and return from the Bank of England; and *Tate* agt. *Hilborth* (2 *Ves. Jr.* 112), in which the giver was old and infirm, but had no particular or dangerous illness.

If then, a gift is void as a *donatio mortis causa*, when made in contemplation, expectation, consideration, apprehension or prospect of death, arising from sickness, infirmity, old age, or any external or anticipated peril or danger, as seems to be fully established by the learned writers above mentioned and the authorities cited by them, there can be no good reason why an enlisted soldier of the United States might not, under the circumstances detailed in the pleadings and admissions of the parties, have made such a gift of his bounty money to another as would constitute a good and complete donation *mortis causa.* The obligation assumed by such soldier almost necessarily exposed his life to extraordinary perils and dangers.

I am of opinion that, if the gift had been proven, the defendant would have been entitled to judgment upon the issues, and, therefore, that the learned justice erred in excluding the evidence offered and directing a verdict for the plaintiff.

The judgment should be reversed, with costs, and a new trial ordered.