Smith, Administrator, *v.* Ferguson.

No. 7313.

SMITH, ADMINISTRATOR, *v.* FERGUSON.

DECEDENTS' ESTATES.—*Personal Property.*—*Chose in Action.*—*Title of Administrator.*—*Replevin.*—When the administrator of a decedent is appointed and qualified, the title and possessory rights of the decedent, in and to his personal property and choses in action, at once pass to and vest in his administrator, and he can maintain an action of replevin therefor.

SAME.—*Gift Inter Vivos.*—*Delivery in Præsenti.*—To constitute a valid gift *inter vivos* of personal property or choses in action, it is essential that the gift be delivered *in præsenti* and unconditionally; because, if the gift be delivered to a third person, for future delivery to the donee, the authority to deliver may be revoked, and, until delivery, the donor retains dominion.

SAME.—*Gift Causa Mortis.*—*Implied Condition.*—A gift *causa mortis* is a gift of a chattel or chose in action, made by a person in his last illness, or *in periculo mortis*, subject to the implied conditions that if the donor recovers, or if the donee die first, the gift shall be void; and it is necessary to the validity of such a gift that there must be an actual delivery of the subject of the gift to the donee, such as will transfer its possession to him.

From the Tippecanoe Circuit Court.

*J. M. LaRue, F. B. Everett, W. C. Wilson* and *J. H. Adams,* for appellant.

*B. W. Langdon,* for appellee.

HOWK, J.—In his complaint in this action, the appellant, the plaintiff below, alleged in substance, that, as the administrator of the estate of Mahala T. Shaw, deceased, he was the owner and entitled to the possession of eight promissory notes, each particularly described, and all of the value of $2,500; and that the appellee had possession of said notes without right, and unlawfully detained the same from the appellant, at Tippecanoe county; wherefore, etc. The cause was put at issue and tried by the court, and a finding was made for the appellee, the defendant below; and over the appellant's motion for a new trial, and his exception saved, the court rendered judgment on its finding.

In this court the appellant has assigned as errors the following decisions of the trial court:

1. In overruling his demurrer to the third paragraph of appellee's answer; and,

2. In overruling his motion for a new trial.

In the third paragraph of his answer, the appellee alleged in substance, that Mahala T. Shaw, the appellant's decedent, on and before the —— day of July, 1875, was the owner and holder of eight promissory notes, particularly describing them; that on said last named day the said Mahala T. Shaw delivered and entrusted all of said notes into the hands and possession of the appellee; that contemporaneously with her delivery of said notes to him, the said Mahala declared to and directed the appellee to take the said notes and do the best he could with them, and furnish her, the said Mahala, with what means she needed to live on, and, after her death, pay what debts he knew she owed, and erect a monument for her like the one that had been ordered for her brother, Solomon, and what was left was Clarinda V. Ferguson's, who was then and since the wife of the appellee, and that the appellee should give what was left to her, the said Clarinda.

The appellee said that he then and there received and took possession of said notes from said Mahala, under the said declaration and terms; that afterwards, in March, 1876, the the appellee exchanged one of the notes for five other notes particularly described; and that, in January, 1877, appellee surrendered Carr's note for $90 to said Carr on account of a debt due him from said Mahala.

The appellee further said that the notes described in the complaint were the notes described in his answer; that afterwards, on the 7th day of October, 1877, the appellee was holding, and in the possession of, the notes described in the complaint, and the said Mahala T. Shaw being then dangerously sick and ailing, and in the apprehension of her death, said to and charged the appellee to do with what was left of the notes, or the proceeds thereof, as she had told him when she delivered the notes to him as aforesaid, on the — day of July, 1875, as thereinbefore alleged, and the appellee then and there promised

the said Mahala that he would do so; that afterwards, on the 8th day of October, 1877, the said Mahala died of said sickness. The appellee charged, that, by reason of the premises, he was entitled to said notes to deal with them as best he could, to pay the decedent's lawful debts, and after building the monument, as thereinbefore described, to give and deliver what might be left of such notes, or their proceeds, to the said Clarinda. The appellee said that the note first described in the complaint, he did not have or hold at the commencement of this action, nor at any time since; and that the estate of said Mahala T. Shaw, deceased, was solvent. Wherefore the appellee said that the appellant was not entitled to said notes, and he prayed judgment for his costs herein.

We are of opinion that the facts stated in this paragraph of answer are not sufficient to constitute a cause of defence to the appellant's action. It is admitted in the paragraph that the notes in controversy were, on the — day of July, 1875, the notes of Mahala T. Shaw, at the time she delivered and entrusted them to the appellee; and it is not shown by any averment therein, that she ever parted with her title to any of the notes during her natural life. She made him her agent, with directions to do the best he could for her with the notes, and to furnish her with what means she needed to live on during her life. Her declaration and direction to the appellee, which must be assumed to have been verbal or oral, because they were not alleged to have been in writing, went further and provided that after her death he was to pay what debts he knew she owed, and erect a monument for her like the one that had been ordered for her brother Solomon, and what was left was Clarinda V. Ferguson's, the wife of the appellee, and that he should give what was left to his wife, the said Clarinda. This is the substance of what transpired between the appellee and Mahala T. Shaw, her declaration and direction, in relation to the notes in controversy, on the — day of July, 1875. It is not shown thereby, as it seems to us, that on that day there was any gift, by or on the part of Mahala T. Shaw,

during her life, of the notes or any part thereof to the appel-
lee, or his wife, or to any one else. There was no gift *inter*
*vivos* of any of the notes or of any part of the proceeds thereof.
The declaration and directions of Mahala T. Shaw to the ap-
pellee in July, 1875, as stated in the answer, did not consti-
tute or show a gift *in præsenti*, or during her life, of the notes
in controversy; but they were testamentary in their terms,
and, without the form or solemnity of a will, attempted to
make a gift of whatever might be left, after certain things had
been done, to take effect as a gift only after her death.

In *Smith* v. *Dorsey*, 38 Ind. 451 (10 Am. R. 118), this court
said: "To constitute a valid gift *inter vivos* it is essential that
the article given should be delivered absolutely and uncon-
ditionally. The gift must take effect at once and completely,
and when it is made perfect and complete by delivery and
acceptance, it then becomes irrevocable by the donor. Gifts
*inter vivos* have no reference to the future, but go into im-
mediate and absolute effect. A court of equity wil not inter-
fere, and give effect to a gift that is inchoate and incomplete."
In *Sessions* v. *Moseley*, 4 Cush. 87, the Supreme Court of
Massachusetts held that a gift *inter vivos* must be delivered in
the lifetime of the donor, because, if delivered to a third per-
son, with instructions to deliver to the donee, the authority
to deliver may be revoked, and until delivery the donor retains
dominion. 1 Pars. Con. 234; 2 Kent Com. 438; Bouv. Law
Dict., Tit. Gifts *inter vivos;* *Bedell* v. *Carll*, 33 N. Y. 581;
*Irish* v. *Nutting*, 47 Barb. 370; *Dexheimer* v. *Gautier*, 34 How.
Pr. 472.

It follows from what we have said, that the averment of
appellee's answer in reference to what was said and done by
and between him and Mahala T. Shaw on the —— day of
July, 1875, of and concerning the notes in controversy, ut-
terly fail to show a valid gift *inter vivos* of the notes, or of any
of them, or of any part of the proceeds thereof, to the appellee's
wife or to any other person. They fail to show that she
parted or intended to part during her life with her title to or

ownership of any of such notes. If the title to the notes remained in her, if she continued to be the owner thereof, and if she might have asserted and maintained against the appellee or the appellee's wife, her right to the possession thereof during her natural life, it must be that upon her death her title to and ownership of the notes, and her right to the possession thereof, passed to and vested in the appellant, as the administrator of her estate. We have hitherto considered only the averments of the answer in regard to what transpired between the appellee and Mahala T. Shaw, concerning the notes in controversy in July, 1875. At that time, it must be assumed, as nothing was alleged to the contrary, Mahala T. Shaw was in good health, and we have reached the conclusion that the allegations of the answer did not show that she then made a valid gift *inter vivos* of the notes to appellee's wife or to any one else.

The question remaining for consideration is this: Do the the averments of the answer show a valid gift *causa mortis* of the notes in controversy? A gift *causa mortis* is thus defined: A *donatio causa mortis* is a gift of a chattel made by a person in his last illness, or *in periculo mortis*, subject to the implied conditions that if the donor recovers, or if the donee die first, the gift shall be void. 2 Schoul. Pers. Prop., p. 122, note 1. In 3 Redf. Wills, 326, it is said, *inter alia*, that there must be an actual delivery of the chattel to the donee, so as to transfer the possession to him, in order to constitute a good gift *mortis causa*. In the third paragraph of appellee's answer in the case in hand, it was not alleged that on October 7th, 1876, there was any actual delivery of the notes to the donee, or any transfer of the possession thereof. In the close of his answer, the appellee alleged that on the 7th day of October, 1877, the said Mahala T. Shaw being then dangerously sick, and in the apprehension of her death, charged the appellee to do with what was left of the notes, or the proceeds thereof, as she had told him when she delivered the notes to him in July, 1875, which notes he was still

holding and in the possession of, and the appellee then and there promised the said Mahala that he would do so. We do not think that these allegations were sufficient to show a gift then made, *causa mortis,* of what was left of the notes or of the proceeds thereof. They show rather, as it seems to us, an unwritten will, whereby she attempted to dispose of whatever might be left after her death of the notes or the proceeds thereof.

The charge of Mahala T. Shaw to the appellee on October 7th, 1877, in her last illness and in apprehension of her death, did not constitute a gift, either *inter vivos* or *causa mortis,* of the notes or of what might be left of the proceeds thereof, to the appellee's wife. It was simply an injunction or direction that, after her death, the appellee, as her agent and the custodian of her notes, should carry out her wishes in relation thereto and dispose of the same, as she had directed in July, 1875; that is, he should pay whatever debts he knew she owed and erect a monument for her like the one ordered for her brother Solomon, and then he should give whatever might be left of the notes, or of their proceeds, to his wife, Clarinda V. Ferguson. In 2 Schouler on Personal Property, p. 82, it is said: "An agency is revoked by the principal's death: therefore, the agent of one who intends a gift *inter vivos* must have performed what was incumbent upon him to make the transfer complete during the donor's lifetime; otherwise the gift fails, as though the donor himself had failed to make a reasonable delivery. Nor can a gift *inter vivos* be sustained which contemplates a postponement of delivery by the agent or trustee until the donor's decease; for a gift of personalty made after this fashion must stand, if at all, as a gift *causa mortis,* or else on the footing of a testamentary disposition, with all the formalities of a will." *Sessions* v. *Moseley, supra; Allen* v. *Polereczky,* 31 Maine, 338; *Phipps* v. *Hope,* 16 Ohio St. 586.

Construing together all the allegations of the third paragraph of appellee's answer, we are of opinion they wholly

fail to show that Mahala T. Shaw parted, or intended to part, during her lifetime, by gift *inter vivos* or *causa mortis*, with her title to or right to the possession of the notes in controversy or the proceeds thereof. Notwithstanding all that was said or done by or between her and the appellee, of and concerning such notes or their proceeds, they remained her property and estate, we think, until and at the moment of her death, and as such the title thereto and the right to the possession thereof passed to the appellant as the administrator of her estate, to be administered according to law. The alleged solvency of her estate furnishes no reason whatever for the appellee's detention of the notes as against her administrator. It seems to us, therefore, that the court erred in overruling the demurrer to the third paragraph of the appellee's answer.

This conclusion renders it unnecessary for us to consider or decide any of the questions arising under the alleged error of the court in overruling the appellant's motion for a new trial. We may properly remark, however, that the evidence in the record does not, in our opinion, sustain the averments and theory of the third paragraph of appellee's answer. The appellant gave in evidence a written receipt, executed by the appellee to Mahala T. Shaw, in substance as follows:

"BATTLE GROUND, IND., March 22d, 1876.

"Received of Mahala T. Shaw the following notes, to be held in trust for her:" (Here follows a description of the notes in controversy in this action.)

(Signed) "W. R. FERGUSON."

It will be observed that this receipt, from its date, was executed by appellee to Mahala T. Shaw, about eight months after her declaration and direction to him, in July, 1875, upon which the appellee founded the third paragraph of his answer. If, by this receipt, the appellee became the trustee of Mahala T. Shaw, and so held the notes, by the terms of the receipt he held them "in trust for her," as the sole *cestui que trust*, from and after the date thereof, and any prior parol trust, in relation to the notes, was thereby abrogated. It was

shown by the evidence that this receipt was in the pocket-book of Mahala T. Shaw, which pocket-book was found under her pillow immediately after her death. It may be assumed, therefore, as it seems to us, that the notes were held by the appellee under such receipt, at the time of the death of Mahala T. Shaw, and the consequent determination of the trust thereby created. This being so, the appellant as her administrator was entitled to the notes and the possession thereof, as against the appellee.

The judgment is reversed with costs, and the cause is remanded with instructions to sustain the demurrer to the third paragraph of appellee's answer, and for further proceedings not inconsistent with this opinion.

Petition for a rehearing overruled.