Donover, Adm'r, v. Argo.

## DONOVER, Administrator, v. ARGO *et al.*

**Estates of Decedents:** DISCOVERY OF ASSETS: GIFT: EVIDENCE: ORDER.  The defendants, who were the father and mother of the plaintiff's intestate, were cited, under section 2379 of the Code, to appear for examination as to the possession by them of assets belonging to the estate.  Their testimony showed that the decedent died at their house, and that the night before he died he sold two horses to one P., who was the next day to give his notes for the price, to-wit, one note for one hundred and fifty dollars, and one for fifty dollars.  He took one of the horses that night, and the next morning, the decedent having died during the night, he took the other horse and left with the father the notes which he was to give, and afterwards paid to the father the amount of the fifty-dollar note.  The larger note and money the father admitted he still had, but he claimed that they belonged to his wife, pursuant to an oral direction of the son, that when the notes came in the morning they should be hers.  *Held* that, as the intended gift, as alleged, was not consummated by possession during the life of the son, it was void, and the court properly ordered the defendants to deliver the property to the plaintiff ; but a further order, that upon failure so to do they should be imprisoned, is modified so as to apply only to such of them as, having the power to deliver the property, shall refuse so to do.

*Appeal from Appanoose District Court.*—HON, DELL STUART, Judge.

FILED, FEBRUARY 11, 1890.

PROCEEDINGS to discover assets belonging to an estate, and to compel their delivery. From a judgment requiring the defendants to deliver the property to the plaintiff they appeal.

*Geo. D. Porter,* for appellants.

*T. M. Fee,* for appellee.

GRANGER, J.—The defendants are husband and wife, and were the parents of James H. Argo, deceased, who is the plaintiff's intestate. The plaintiff, under the provisions of the Code, section 2379, obtained an order from the district court of Dallas county for the appearance of the defendants to answer, and, as a result of the examination, the district court found that William H. Argo held a note for one hundred and fifty dollars, and fifty dollars in money, which he wrongfully detained from the plaintiff as administrator of the estate of James Argo, deceased, under a claim that they belonged to the defendant Sarah Argo, and ordered them turned over immediately, or, at furthest, on demand of the administrator, and, on failure, that they be imprisoned until the order should be complied with. The question on appeal is as to the validity of, the order. The examination involved inquiries as to other property as to which the district court made no order, and our investigation may be limited to the order as to the note and money.

As the order of the court was based on the statements made by the defendants at the examination, and our action is to determine the validity of the order, it is necessary, to an understanding of our ruling, that the statements as to the notes and money should appear.

Some undisputed facts may, however, be stated as preliminary : "James H. Argo died at the home of his parents. The night before he died he owned and sold a span of colts to Mr. Potts, for which Potts was to give his notes, one for fifty dollars and one for one hundred and fifty dollars. Potts took one of the colts away that night, and was to give his notes, and take the other in the morning." In the morning he returned with the notes, and took the other colt, but before he returned James died, and the notes were delivered to his father. There is no question as to the attitude of William H. Argo at the time the order was made. He was examined, and admitted that he had the one hundred and fifty-dollar note, and had received fifty dollars in payment of the other note, and was holding the note and money for his wife, and also that he received the notes after the death of James.

The following are Mrs. Argo's answers under oath, at the examination, as to her ownership of the notes : "I did have a conversation with Will and my son's cousin about the Potts notes, and James said that 'he wanted mother to have them for his care.' He said I 'justly earned them, and more too.' He gave direction that when the notes came back in the morning that Bill should 'sign them over to ma.' That was his exact language, as far as I can remember. My husband has collected fifty dollars, and my husband has the one hundred and fifty-dollar note in his possession for me." The plaintiff neither took nor offered testimony in the case, except the answers of the defendants. The defendants, however, examined several witnesses upon the point of Mrs. Argo's ownership of the notes, but there is nothing to change the legal effect of Mrs. Argo's statements as to her rights.

The points urged by appellants are that the court, in making its order, acted without authority of law, and that the effect of the order is to deprive the defendants of property without due process of law. The argument proceeds upon the theory that there was an

issue of fact to be determined, and says that no one can read the record and not come to the conclusion that the Argos claimed the property under an honest claim of right, and, this being so, the court acted without authority. In this respect we think there is a misapprehension of the question presented by the record. If this note and money are claimed by any one, it is by Mrs. Argo. The question in the case is, who is entitled to the possession of the note and money? The inquiry may, of course, incidentally involve the question of ownership, but the main question should be kept prominent, and not lost sight of, in considering other questions. We do not understand that appellants are claiming in this court that James Argo made a verbal will, which is the basis of Mrs. Argo's right to the property, but, to avoid any misapprehension in that respect, it may be well to say that she made no reference to such a will, nor does it appear that such a will is in existence; for, to be the basis of such a claim, it must be established in court. We, therefore, dismiss that feature of the case.

Now, let us take Mrs. Argo's statements, and look for any claim on her part to the property. She nowhere says it is her property, or that she has any claims to it, nor does she anywhere state facts from which a legal inference of ownership or claim can be drawn. She does speak of a gift, but she says, in effect, that it was unexecuted, and such a gift is not valid - as against an administrator or others. *Willey v. Backus*, 52 Iowa, 401. When James talked of having the notes signed over to her, they were not in existence, and were not while he lived. She says she had no claim against him, and the transaction could not have been a payment. On what state of facts, then, can or does she claim a right to the possession of the property? She nowhere says, in any way, that she is entitled to the possession. The fact that she is contesting the order of the court is the only ground for inferring that she claims the possession. The order of the court seems to

have been made upon the admitted facts of the case, showing her not entitled to the property. We think, under the state of facts, the court did not err in making the order to turn over the property. This holding in no way conflicts with, nor extends, the rule as expressed in *Smyth v. Smyth*, 24 Iowa, 491, or *Rickman v. Stanton*, 32 Iowa, 134. The record shows that the property is in the possession of W. H. Argo, and the order provides for the imprisonment of defendants on satisfactory proofs of a failure or refusal to obey the order. It is likely not intended that a defendant, not in fault, should be punished; but, to avoid any mistake in that respect, we think the order should be so modified as to provide that a party shall only be so imprisoned who, having the ability to perform the order, neglects or refuses so to do. With such a modification, the judgment is AFFIRMED.