## S. J. M STOKES, Appellant, v. H. H. SPRAGUE, Administrator.

**Gifts Causa Mortis:** DELIVERY. Defendant's intestate endorsed certain notes, "In case of my death pay to" the plaintiff. This endorsement was made to reimburse plaintiff for nursing deceased who, in her last illness, stated to a friend that she wished to have these notes go to the plaintiff, and the friend promised to deliver the notes to the plaintiff, but did not take possession of them until after decedent's death. *Held*, not a sufficient delivery of the notes to constitute a gift *causa mortis*.

**Trusts:** *Evidence.* Defendant's intestate endorsed certain notes, "In case of my death pay to" the plaintiff, to reward plaintiff for nursing deceased, who, during her last illness, signified her wish to a friend that plaintiff should have said notes. The friend promised to take possession of the notes, but did not until after the death of deceased, when she delivered them to defendant who was subsequently appointed administrator of the estate. *Held*, that the defendant did not hold the notes in trust for plaintiff.

**Demurrer:** PETITION IN EQUITY: *What is.* A petition alleged defendant's intestate indorsed to plaintiff certain notes to reimburse her for nursing, and requested a friend to take possession of them; that, after decedent's death, the friend took possession of the notes, and delivered them to defendant at his request, and on his agreement to return them; that he was subsequently appointed administrator of decedent's estate, and refused to return the notes; that the endorsements and the decedent's intention constituted a trust of the notes for plaintiff's benefit, and that the transaction constituted a delivery to her; and prayed that plaintiff be adjudged the owner and awarded the possession of the notes, and for such other relief as would be proper. *Held*, that since the petition was in equity, because it sought the declaration and enforcement of a trust, a demurrer that the facts stated did not entitle plaintiff to the relief demanded, was sufficient in form.

*Appeal from Boone District Court.*—HON. S. M. WEAVER, Judge.

FRIDAY, DECEMBER 15, 1899.

ACTION to recover the possession of certain promissory notes, or, in case they cannot be delivered, to recover their value, and for other relief. A demurrer to the petition was sustained. The plaintiff refused to plead further. Judgment was rendered against her for costs, and she appeals.— *Affirmed.*

*R. F. Jordan* for appellant.

*A. J. Holmes* and *D. R. Hindman* for appellee.

ROBINSON, C. J.—The material facts stated in the petition are, substantially, as follows: The defendant is the administrator of the estate of Ella L. M. Sprague, who died in Boone county, intestate, on the twenty-fourth day of December, 1896. Her husband and mother survived her, but she left no children. The plaintiff is a sister of the decedent, and resides at Friend, in the state of Nebraska. For several years prior to the death of the decedent the plaintiff transacted business for her in Nebraska. For a long time prior to her death the decedent "was in poor health, and had bad spells, and would become despondent, and on one or two occasions sent for the plaintiff from her home in Nebraska; that she feared she was about to die, and that she needed assistance and attention of the plaintiff; that she had no blood relations within many hundred miles; and that the plaintiff, in response to such requests, left her home in Nebraska, and came to Boone, and assisted her sister by caring for her and waiting upon her, in all a considerable length of time; and on such occasions the decedent expressed her intention to, in the event of her death, reimburse the plaintiff, and to remember her in a substantial way." A warm sisterly feeling existed between the plaintiff and decedent, and the latter at various times expressed her appreciation of what the plaintiff had done for her, and an intention to "reimburse her therefor."

At a time not specified, the decedent, for the purpose of investing the plaintiff with the title to two promissory notes, —one of which was for three hundred dollars, payable to the order of the decedent, and secured by a mortgage on land in Nebraska, the other of which was for the sum of three hundred and sixty dollars, payable to the order of the decedent, and secured by a mortgage on real estate in Boone, —indorsed on the note first described the following: "In case of my death, pay to Mrs. S. J. M. Strokes (my sister), of Friend, Saline county, Nebraska, Ella L. M. Sprague," and on the other note the decedent made, in her own hand-writing, the following indorsement: "In case of my death, pay to my sister Mrs. S. J. M. Strokes, of Friend, Saline county, Nebraska." For several years before her death the decedent was in failing health, was subject to serious sick-ness, and had "sinking spells," and the indorsements referred to were made to transfer the title to the notes to the plain-tiff, and to provide for the contingency of the sudden death of the decedent. The day before her death the decedent, who had been unwell for some time, became suddenly and dangerously ill, and, in order to carry out her intentions, as shown by the statements she had previously made and by the indorsements on the notes, sent for one of her neighbors, —a lady, with whom she was intimately acquainted. At that time the decedent was confined to her bed, and spoke with difficulty, but told her friend who had been called in that she wished certain things which were in a pocketbook, which was described, in a closet, which was indicated, to go to the plaintiff. The friend suggested to the decedent that she was very "blue," and would soon be better, but the decedent responded that she would not get better, and that she believed that she was about to die. The friend then promised to get the things in the pocketbook, and the decedent believed that she did take possession of the pocketbook, and would carry out the wishes of the decedent as she had expressed them. After the death of the decedent, the friend

took possession of the pocketbook, which was found at the place indicated by the decedent. The pocketbook then contained the notes and mortgages which we have described, with indorsements as stated. The key to the closet in which the pocketbook was found was delivered to the friend referred to, and she locked the closet, and retained possession of the key with the consent of the defendant. That appears to have been two days after the death of the decedent. The defendant was present at the time, and asked for the notes and mortgages, and the friend to whom they had been intrusted delivered them to him on his request and agreement to return them to her whenever possession thereof should be requested. It appears, however, that the defendant had not been appointed administrator of the estate of the decedent, and was not so appointed until the 6th day of January, 1897. After his appointment he made an inventory of the estate of the decedent, in which he included the notes, and refused to deliver them to the plaintiff, although requested to do so, and claims that they are a part of the assets of the estate. The petition further alleges that the indorsements on the notes and the intention of the decedent expressed in her last illness "constituted a trust in said notes for the benefit" of the plaintiff; that the transaction constituted a delivery of the notes to the plaintiff, and vested the title to them in her, and that she is now the owner and entitled to the possession of them, and to the benefits accruing therefrom, and to the mortgages; and that possession thereof is wrongfully held by the defendant. The prayer of the petition is in words as follows: "Wherefore plaintiff prays that the court find that the plaintiff is the owner of said notes; that she be awarded the possession of said notes, or, if the same cannot be delivered to her, then that she have judgment against the defendant, as administrator of said estate; and that her claim against said estate be established for the value of said notes, or any sums that he may have collected thereon; that said notes be found to-

not constitute any part of the estate of the decedent; and that the plaintiff have such other rights as would be proper in the premises with the costs."

I.   The demurrer was in words as follows: "Comes now the defendant in the above-entitled cause, and demurs to the petition of the plaintiff on the ground that the facts stated in the petition do not entitle the plaintiff to the relief demanded." The plaintiff contends that the demurrer is not sufficient, under the statute, to raise the question sought to be presented by it. The fifth of the grounds or reasons for demurring to a petition which section 3561 of the Code provides is: "(5) That the facts stated in the petition do not entitle the plaintiff to the relief demanded." But section 3562 is as follows: "A demurrer must specify and number the grounds of objection to the pleadings, and it shall not be sufficient to state the objection in the terms of the preceding section, except that a demurrer to an equitable petition for the fifth reason of said section may be stated in the terms thereof." A demurrer to a petition in an action at law, stated in the terms of the fifth subdivision of section 3561, is not sufficient, and should be overruled. *District Tp. of Eden v. District Tp. of Templeton,* 72 Iowa, 687; *Traders' Bank of Chicago v. Alsop,* 64 Iowa, 97; *Davidson v. Biggs,* 61 Iowa, 309; *McLaughlin v. Bascomb,* 36 Iowa, 593; *Childs v. Limback,* 30 Iowa, 398. Therefore, unless the petition is to be treated as in equity, the demurrer was insufficient, and the court erred in sustaining it. The specific demands of the petition for relief are, in effect, demands for judgment for the possession of the notes and mortgages, or, if possession cannot be had, of judgment for their value. That relief is what is usually sought in actions for the recovery of specific personal property prosecuted at law, and of which courts of law have complete jurisdiction. The only portion of the prayer for judgment which can properly be regarded as a demand for equitable relief is the concluding part, in this language: "And

that the plaintiff have such other rights as would be proper in the premises." But that alone is not sufficient to show that the action is in equity. For that portion of the prayer to be of any force, it must appear that the petition contains averments which authorize the granting of equitable relief. The only part of the petition which can be regarded as tending to show grounds for such relief is that which states that the indorsements upon the notes and the intention manifested by the decedent as expressed by her in her last illness constituted a trust in the notes for the benefit of the plaintiff. We are of the opinion that this portion of the petition was designed by the plaintiff to aver a trust for her benefit, and that the last part of the prayer of the petition was designed to ask that the trust be enforced. This conclusion is strengthened by the fact that the plaintiff insists in her original argument and in her reply that the facts stated in the petition show a trust. We think that the district court was justified in concluding that the plaintiff designed the petition to be considered as in equity, and in treating the demurrer as sufficient in form.

II. We are next required to determine whether the decedent accomplished an actual or a constructive transfer of the notes and mortgages by the indorsements on the notes and by what she did the day before her death. It is claimed by the plaintiff that what was done by the decedent operated as a gift *causa mortis* of the notes and mortgages. A gift of that class is defined to be "a gift made by a person in sickness, who, apprehending his dissolution near, delivers or causes to be delivered to another the possession of any personal goods to keep as his own in case of the donor's decease." 8 Am. & Eng. Enc. Law, 1341. Three things are necessary to such a gift: (1) It must be made with a view to the donor's death; (2) the donor must die of that ailment or peril; (3) there must be a delivery. *Grymes v. Hone,* 49 N. Y. 17. The only question in this case in regard to the alleged gift is, was there a delivery?

The delivery may be to a third person for the donee.     8 Am. & Eng. Enc. Law, 1349. In *Wilcox v. Matteson*, 53 Wis. 23 (9 N. W. Rep. 814), it appeared that the husband of the plaintiff, while on his deathbed, and three hours before his death occurred, told an attendant that his pocketbook was under him in the bed, and that she should give it to his wife when she came; that there were money and papers in it which would be of value to her, as she would need them. After his death the attendant took the pocketbook, gave it to another person to be delivered to the wife, and it was so delivered within one day after the death of the husband. It was held that there was no delivery of the pocketbook or its contents during the life of the husband, and that what was done was not effective as a gift, although there was no doubt that the husband intended that his wife should have the pocketbook and its contents as her property. In *Gano v. Fisk*, 43 Ohio St. 462 (3 N. E. Rep. 532), it appears that a person who was at the point of death said to a relative present,—one Mrs. Fish: "My notes are in a little box on the bureau there. I want you to take them, and divide them equally among your children." The person addressed obtained the key, and tried it in the box, and, for fear that she might lose the key, then gave it to her husband. After the death of the decedent occurred, Mrs. Fish took the box containing the notes to her home. It was held that there was not a completed gift. The case of *Newton v. Snyder*, 44 Ark. 42, involved facts as follows: One O. P. Snyder died intestate. At the time of his illness and death his wife was absent. Being informed that his death was near, he told his attendants that he had one thousand six hundred dollars in bank, nine hundred and fifty dollars under his pillow and in his coat pocket, and several hundred dollars in the hands of different persons; that he desired that three hundred dollars of the money go to persons named, and the remainder to his wife. After that was said, the money was found, and counted, and Snyder was apprised of the fact, but gave no

other directions in regard to it. The court said: "To establist a gift *causa mortis,* the evidence must be sufficient to show, not only that the person in extremis designated with proper distinctness the thing to be given and the person who is to receive it, but it must establish, also, that the property was presently to pass, and that the intention was carried into effect by an actual or effective delivery. In this respect there is no difference between the gifts *inter vivos* and *causa mortis."* The court held that the persons who gathered and held the money acted for the decedent, and that title thereto did not pass by what was said and done. The rule of the cases we have cited seems to be supported by the great weight of authority, although there are cases entitled to much consideration, which tend to the view that, if the intent of the decedent be fully established, an actual or constructive delivery of the personal property which he desires to give to another is not essential to the transfer of the title. The case of *Ellis v. Secor,* 31 Mich. 185, appears to be of that character. The facts involved in *Stephenson's Adm'r v. King,* 81 Ky. 425, also relied upon by the plaintiff, distinguish it from this case. In that case it appears that Mrs. Stephenson, whose death was near, desired to give to her mother a certain promissory note and certain bonds, which were in the hands of an agent. The agent had sent her a statement, which showed that he held the instruments in question for her. About a week before Mrs. Stephenson died, she told her mother that she gave her property to the mother; "told her, about a week before she died, she gave her everything; gave her the key at the time, and told her that everything that was there was hers." The day before her death she caused her mother to bring her writing desk, which she opened, took therefrom the statement of her agent, and delivered it to her mother, at the same time saying that the paper "was to show the property she had at Louisville, and to get her money on the paper." The mother took the paper, and placed it in her pocket. The court held that the inten-

tion to make the gift was established by the undoubted testimony, and that the delivery of the key to the desk and the actual delivery of the statement of the agent, which was the only evidence she had of his possession for her use, was a sufficient delivery to make the gift complete. The case of *Devol v. Dye,* 123 Ind. Sup. 321 (24 N. E. Rep. 246); also cited by the plaintiff, is distinguishable by its facts from this case. Moreover, the court there said that: "A mere unexecuted purpose, however clearly or forcibly expressed, so long as it rests merely in intention, is not effectual. The intention must not only have been manifested, but, in addition, in order to consummate the gift, the donor must have transferred the possession of the thing to the donee in person, or to some one for his use, under such circumstances as that the person to whom delivery is made is thenceforward affected with a trust or duty on the donee's behalf." See, also, *Martin v. Funk,* 75 N. Y. 134; *Hatch v. Atkinson,* 56 Me. 324; *Coleman v. Parker,* 114 Mass. 30; *Baskett v. Hassell,* 107 U. S. 602 (2 Sup. Ct. Rep. 415, 27 L. Ed. 500); *Brunn v. Schuett,* 59 Wis. 261 (18 N. W. Rep. 260); *Walter v. Ford,* 74 Mo. 195. See, also, *Donover v. Argo,* 79 Iowa, 574; *Peters v. Construction Co.,* 72 Iowa, 405; *Willey v. Backus,* 52 Iowa, 401; 8 Am. & Eng. Enc. Law, 1347, and notes. Applying what we believe to be the better rule, and the one finding the strongest support in the authorities to the facts set out in the petition, we conclude that a sufficient delivery of the notes and mortgages in question to constitute a completed gift is not shown. That the decedent intended to give the instruments described to the plaintiff is established, but there was no delivery. The indorsements on the notes were insufficient, without an actual or constructive delivery, and the directions given by the decedent to her friend, and the promise of the latter to carry out the wishes of the decedent, were without effect, for the reason that the decedent did nothing which

can be regarded as an actual or symbolical delivery of the instruments, and the friend did not take possession of them, nor of the pocketbook which contained them, nor of the key to the closet in which they were deposited, until after the death of the decedent. Therefore, there was neither an actual nor a constructive delivery of the instruments during the lifetime of the decedent.

III.    Much of what we have said applies to the claim of the plaintiff that the notes and mortgages should be adjudged to be held in trust for her. What the plaintiff did for her sister was done without any agreement for compensation, but, if that were not true, no agreement that the instruments in suit should be transferred to the plaintiff, or held for her benefit, is shown. The most that can be said is that the decedent frequently expressed gratitude for the sisterly attentions she had received from the plaintiff, and had an intention to reward her for them by giving her the instruments in suit, but for the reasons stated, the intention was never given effect. We conclude that the demurrer was properly sustained, and the judgment of the district court is AFFIRMED.

GRANGER, J., not sitting.