ALEXANDER SZABO, *et al., Appellants,* v. HARRY SPECK-MAN, *et al., Appellees.*

Opinion Filed February 15, 1917.

1. Where a bill for partition does not in terms allege specifically the quantity and proportionate share held by each person interested in the lands sought to be partitioned, it will nevertheless be held sufficient on demurrer if the allegations are sufficiently clear to enable the court to adjudicate fully the rights and interests of the parties and the quantity and proportionate share held by each in the lands.

2. A bill for partition is not necessarily multifarious because there may be united in it several causes of action, if they grew out of the same transaction and all the defendants are interested in the same rights, even although the subject-matter of the controversy may be encumbered with conflicting claims, if the objection does not appear to be so grave as to interpose an obstacle to the proper administration of justice.

3. A court of equity taking jurisdiction of a cause for one purpose will proceed with the determination of all matters presented, where the purpose for which the court takes jurisdiction is the principal relief sought, and the other matters are incident thereto.

4. Under the provisions of Chapter 6907, Laws of 1915, affirm-

ative matter averred in an answer to a bill in chancery if deemed to be insufficient should be met by motion to strike such averments.

5. A gift *causa mortis* to be valid should be made in contemplation of the near approach of death from danger then impending. There should be actual or constructive delivery of the thing given, or the means of getting possession or enjoyment of it.

6. A valid gift *causa mortis* of money on deposit in bank which is not a savings account, and which is subject to the depositor's check, cannot be made by delivery of the depositor's bank book merely.

7. A valid gift *causa mortis* of a stock of goods contained in a store room may be made by delivery of the key to such store room to the donee or his agent.

8. It is error to sustain exceptions to an entire paragraph in an answer where the paragraph contains averments which are responsive to the bill or which set up a valid defense thereto.

Appeal from Circuit Court for Hillsborough County; F. M. Robles, Judge.

Order reversed.

*H. S. Hampton* and *F. J. Hampton,* for Appellants;

*Dickenson & Dickenson,* for Appellees.

ELLIS, J.—The appellees, about twenty-seven in number, who were the uncles, aunts and cousins of Fred William Meyer on his mother's side, exhibited their bill of complaint in the Circuit Court for Hillsborough County against Alexander Szabo and Nellie Meyer and Lizzie Meyer, two aunts of Fred William Meyer on his father's side, for partition of certain real estate and an

accounting between the heirs of Fred William Meyer, who it is alleged died in Tampa, Florida, seized and possessed of certain real and personal property, and Alexander Szabo as administrator of Meyer's estate, and an injunction to restrain Alexander Szabo from paying over or delivering to the defendant Nellie Meyer the proceeds, personal property, money, etc., coming into his hands as administrator of the said estate of Fred William Meyer, deceased.

The bill alleged in substance that Meyer died intestate, in Hillsborough County in 1915, seized and possessed of certain described real estate; that he had an equity in certain of the real estate, and owned certain personal property consisting of cash on deposit in the Citizens Bank and Trust Company of Tampa, and a stock of merchandise; that Alexander Szabo was appointed administrator of the estate and duly qualified as such, and has assumed full control and management of the estate; that the defendant Nellie Meyer claims the entire interest both real and personal of the estate, and that Alexander Szabo as administrator is threatening and preparing to pay over to her all of the personal property of the estate; that the two defendants Nellie and Lizzie Meyer are sisters and the sole heirs at law of the father of the deceased Fred William Meyer, and that the complainants, sisters and brothers and children and grand-children of deceased sisters and brothers of the deceased mother of the said Fred William Meyer, who it is alleged died without wife, children, brother, sister, mother or father, grand-mother or grand-father surviving him. A demurrer to the bill for want of equity, because of multifariousness and vagueness of the allegations as to complainants' interests, improper joinder of parties, and because complainants show no right to the personal property of the

estate, was overruled.   Whereupon the defendants an-
swered admitting the allegations as to the death of Fred
William Meyer, demanding proof of the possession by
Meyer at his death of the real and personal property
described in the bill, proof as to the allegations of the
relationship of complainants to the deceased Fred Wil-
liam Meyer, denying their right to the relief prayed for,
and admitting that Nellie Meyer is claiming the entire
interest in the property of the estate, denying that Alex-
ander Szabo as administrator of the estate has any right,
title or possession of the personal property described in
the bill, which it is averred is being administered by the
Probate Court of Hillsborough County, and denying
that as administrator he is preparing or threatening to
pay it over to the defendant Nellie Meyer.   The answer
contains certain averments of fact upon which the de-
fendant Nellie Meyer avers her sole ownership and title
to the personal property of the estate, which averments
are as follows:

"And these defendants, further answering said bill,
and each and every allegation thereof, beg leave to set
forth, jointly and severally, as follows:   That in the
month of March, 1915, one Frederick William Meyer,
who is a nephew of the defendant, Nellie Meyer herein
and who all during his lifetime regarded said defendant
with love and affection and had been advised and assisted
for many years by the said defendant Nellie Meyer,
became afflicted with a fatal disease and was advised by
his physician that he would be compelled to undergo
a serious operation; thereupon, after receiving such ad-
vice, the said Frederick William Meyer, on the eve of
said operation, and at a time when by reason of the
existing disease and said impending operation, his death
was quite probable, sent for the defendant Alexander

Szabo, who at said time, and at the present time had and has no individual interest in the property involved in this litigation, but at said time was a close friend and business associate of the said decedent; that the said Frederick William Meyer then and there explained to the said defendant Szabo that he anticipated his death would result from said operation he was about to undergo, from the sickness with which he was then suffering; that the only relative in the world who had any claim upon him by reason of his affection or otherwise, was the defendant Nellie Meyer; that as he believed he was about to die, and had no opportunity to arrange his affairs; that he then and there delivered to the defendant Alexander Szabo the keys to his building, his store and bank book, and then and there stated to the said Szabo that he then delivered to him as agent for his said aunt, the said Nellie Meyer, all his estate, including money in bank, and begged said Szabo to close his affairs, and to see that said property was safely delivered to the said defendant Nellie Meyer.

"These defendants further answering, say that thereupon the said Alexander Szabo, at the request of the said Frederick William Meyer, then and there took possession of the keys, stock of merchandise, and all the estate of the said Frederick William Meyer, for and on behalf of the defendant Nellie Meyer, and upon the death of the said Frederick William Meyer, immediately following said surgical operation, as the result of said then existing disease, said defendant Alexander Szabo qualified as administrator, and at the time of the filing of this bill of complaint was endeavoring in good faith to carry out instructions and requests of the said Frederick William Meyer; that said estate was indebted in various sums, and said administrator was only endeavor-

ing to pay off said indebtedness and to make delivery of said property to the defendant Nellie Meyer; that the real estate left by said decedent is sufficient to pay the indebtedness of said estate, without resort to the personal property; wherefore, these defendants say that by reason of the foregoing the complainants have no interest, right or title in and to the personal property of said estate, and these defendants pray."

The complainants filed exceptions to the above quoted portions of the answer for scandal and impertinence, which exceptions were sustained in the following order:

"Exceptions sustained because the court feels that delivery of a bank book is not a proper delivery, and further that a proper delivery must be made to the donee, and not to any one as an agent for donee, as it leaves too much room for fraud with relation to the estates of deceased persons.

"Done and ordered this the 25th day of June, 1916."

The demurrer to the bill was properly overruled. The complainants primarily sought partition of the real estate which according to the allegations of the bill was owned by the complainants and the two defendants Nellie and Lizzie Meyer as coparceners, and partition of the personal property in the possession of the defendant Alexander Szabo alleged to be owned by them upon a final settlement of the estate. Sections 1939-1947 General Statutes of Florida, 1906, Florida Compiled Laws of 1914. The allegations of the bill which are admitted by the demurrer assert the ownership in common of the real property, which is described, between the parties to the suit, and although the bill does not set out the quantity and proportionate share held by each with that particularity which it should have done, the allegations are sufficiently clear however as to the relationship of

the complainants and defendants Nellie and Lizzie Meyer to the deceased as to enable the court to adjudicate fully upon the rights and interests of the parties and the quantity and proportionate share held by each.

A bill is not necessarily multifarious because there may be united in it several causes of action, and many complainants whose interests are different in quantity. If the causes of action grew out of the same transaction and all defendants interested in the same rights, the objection on the ground of multifariousness will not be sustained. And even if the subject-matter of the controversy is encumbered with many conflicting claims equity will entertain a suit to determine and adjust all the interests at once. See Farrell v. Forest Investment Co., decided at the present term. The objection to the bill on this ground does not appear to be so grave as to interpose an obstacle to the proper administration of justice, and as we said in the above case, the matter particularly to be considered is convenience in the administration of justice. The court having taken jurisdiction of the cause for one purpose, it will proceed with the determination of all the matters presented. See the authorities cited in Farrell v. Forest Investment Co., *supra*. It is true that the bill did not allege that the debts of the estate had been paid, nor that there were no debts to be paid by the administrator, but it did allege that the defendant Szabo was in possession of the personal property and was about to pay it over and deliver it to the defendant Nellie Meyer, which under the allegations of the bill the complainants had the right to invoke the power of the court to prevent, and to require the administrator to come to an accounting of the personal property in his hands belonging to the estate, and to pay the same over to them accordingly as their interests

were established upon a final settlement of the estate. There is no conflict of jurisdiction between the Circuit and Probate Courts for Hillsborough County presented by the bill.

The affirmative matter set up in the answer which is made the basis for the relief prayed, should have been met by motion to strike the same if complainants thought it to be insufficient.   See Chapter 6907, Laws of Florida, 1915.   Treating the exceptions, however, as objections to the insufficiency of that portion of the answer hereinbefore quoted, we will consider the question of the validity of the averred *"donatio causa mortis."*   A gift of this character must be made in contemplation of the near approach of death from danger then impending, to take effect absolutely only upon the death of the donor. There must be delivery to the donee, actual or constructive, of the thing given; or the means of getting possession and enjoyment of it.   "It is the fact of delivery that converts the unexecuted purpose into an executed and complete gift."   See 12 R. C. L. pp. 955-967; 20 Cyc. 1231; Newton v. Snyder, 44 Ark. 42; Daniel v. Smith, 75 Cal. 548, 17 Pac. Rep. 683; Basket v. Hassell, 107 U. S. 602, 2 Sup. Ct. Rep. 415; Williams v. Chamberlain, 165 Ill. 210, 46 N. E. Rep. 250; McMahon v. Newtown Sav. Bank, 67 Conn. 78, 34 Atl. Rep. 709; Deneff v. Helms, 42 Ore. 161, 70 Pac. Rep. 390; Newman v. Bost, 122 N. C. 524, 29 S. E. Rep. 848; Robson v. Robson, Admr., 3 Del. Chan. 51; Dickeschied v. Exchange Bank, 28 W. Va. 340; Hawn v. Stoler, 208 Pa. St. 610, 57 Atl. Rep. 1115; Stokes v. Sprague, 110 Iowa 89, 81 N. W. Rep. 195; Smith, Admr., v. Ferguson, 90 Ind. 229.   The case of Powell v. Leonard, 9 Fla. 359, holds that in order to constitute a valid gift the transaction must be consummated by delivery of the thing given.   See also

Ross & Co. v. Walker, 44 Fla. 704, 32 South. Rep 934; Fritz v. Fernandez, 45 Fla. 318, 34 South. Rep. 315.

The subject of gifts *causa mortis* and *inter vivos* have received much consideration by text writers and the courts both in this country and England. It is generally conceded that the leading English case on the subject is Ward v. Turner, 2 Ves. Sr. 430, in which it was held that an actual delivery was indispensable to vest the property if the subject-matter is capable of delivery. The first head note states that if the subject-matter be not capable of delivery, there must be delivery of what is equivalent to it at law. In that case the delivery of receipts for the consideration money paid for the purchase of certain annuities was held by the Lord Chancellor HARDEWICKE as not being a sufficient delivery to validate the act. It is unnecessary to review the many cases cited in the briefs upon the subject. It would lead to a discussion of little profit. The conclusion of the Chancellor who heard this case, that the delivery of the bank book was not a sufficient delivery to validate' the gift of the money in bank, we think, was correct; but we do not agree with him that a valid delivery may not be made to an agent of the donee. In the Ward-Turner case the Chancellor said that the delivery of a key to a store room containing bulky goods had been held to be a sufficient delivery of the possession, because it is the way of coming at the possession or to make use of the thing, and therefore the key is not a symbol which would not do so. And in the case of Powell v. Leonard, *supra*, Mr. Chief Justice DUPONT said that what constitutes a good delivery is a question of great difficulty. Its proper solution can only be arrived at by considering not only the locality of the thing donated, but also its nature and kind, and that the delivery of keys as in

the case of goods in a warehouse or trunk has even been held to be a sufficient delivery; he also thought that a delivery of a conveyance as in the case of vessels at sea was sufficient. Gifts *causa mortis*, as the Chancellor said in this case, "leaves too much room for fraud with relation to the estates of deceased persons." For that reason, and the numerous attempts to sustain such gifts by fraud and perjury led to the enactment of the statute for the prevention of frauds and perjury. See Drew v. Hagerty, 81 Me. 231, 17 Atl. Rep. 63, 3 L. R. A. 230.

In the case of a deposit in bank the bank book is merely evidence of the amounts which have from time to time been placed in the bank by the depositor. The possession of the book in the hands of the bank is not evidence that the amounts appearing on the bank book as debits against the bank have been paid, nor does it authorize the person to whom the book has been given to withdraw it. When the deposit is withdrawn it is usually by check, if it is not a savings bank deposit, and neither the bill nor the answer show that the deposit was of that character. In Walsh's Appeal, 122 Pa. St. 177, 15 Atl. Rep. 470, 1 L. R. A. 535, the court said an assignment of such a book like an assignment of a book of original entry, will operate to transfer the entire balance remaining due upon the account, but a delivery of it will no more transfer the funds than will a delivery of a book of original entries transfer the balances due upon the several accounts contained therein. To the same effect is Hawn v. Stoler, 208 Pa. 610, 57 Atl. Rep. 1115, 65 L. R. A. 813. See also 12 R. C. L. p. 965. Any relaxation of the law in aid of gifts *causa mortis* is fraught with danger; such donations amount to a revocation *pro tanto* of written wills and not being subject to the forms prescribed for nuncupative wills, are

clearly of a dangerous nature as TILGHMAN, C. J., said in Wells v. Tucker, 3 Binn. (Pa.) 365, and referred to in Hawn v. Stoler, *supra.*

The Chancellor sustained the exceptions to the entire paragraphs quoted from the answer. As we think the answer sets up a valid gift *causa mortis* as to the stock of goods the order was erroneous. The order should therefore be reversed, and it is so ordered.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and WHITFIELD, JJ., concur.