STEFFEN, Plaintiff, v. DAVIS et al, Respondents.

(217 N. W. 221.)

(File No. 5933. Opinion filed December 31, 1927.)

*C. A. Wells* and *Lewis W. Bicknell,* both of Webster, for Appellant.

*Waddel & Dougherty,* of Webster, for Respondents.

BURCH, J. This suit is based upon a claim filed by plaintiff with Nick Davis as administrator of the estate of Harry Davis, which was rejected and disallowed both by the administrator and the county court. Suit was then brought upon the claim in the circuit court of Day county. At the close of the evidence the court instructed the jury to return a verdict in favor of defendants. From the judgment entered on such verdict and an order overruling a motion for new trial, plaintiff appeals.

The facts upon which the claim is based are as follows: Deceased, Harry Davis, resided in Andover, S. D. He was a brother of the administrator, and was engaged to marry plaintiff, Grace Steffen. He became sick in the early part of 1923, and while ill and in Aberdeen to consult physicians, on the 6th day of February, 1923, in company with his brother Nick, he produced two certificates of deposit—one No. 8477 for $1,000 issued by the Citizens' State Bank of Andover drawing interest at 6 per cent; the other

for $664.81 issued by a bank in Groton. It is claimed that there was a conversation between the two brothers wherein it was stated that if either should die the survivor would have the other's property. Harry Davis at that time indorsed on the back of the two certificates these words:

"In case of death pay this order to brother Nick Davis.
"Signed by myself, Harry Davis."

—and delivered the two certificates to his brother Nick. Later Harry became so ill that it was thought necessary to take him to a sanitarium in Minneapolis. While on the train en route to Minneapolis, Harry seemed anxious to make his will, and wanted to go back to Andover for that purpose, but was informed by John Steffen, father of plaintiff, that he could make the will just as well in Minneapolis. Later during the night Harry got up and insisted on making some disposition of a part of his property. He borrowed a pencil of Nick, wrote out an order as follows:

"Andover 2-21-23
"Mr. Earl Stone—Please turn the 1,000 dollars I have on your bank to Miss Grace Steffen.

"Sign by myselft, Harry Davis."

—handed the paper to Nick to read, and asked if it was all right, to which Nick answered "Yes." He then delivered the paper to John Steffen, father of Grace, and asked him to give it to Grace, the appellant. Earl Stone was cashier of the Citizens' State Bank of Andover. On arrival in Minneapolis, Harry was placed in a sanitarium, and about four months later was taken to the insane asylum at Yankton, where he died September 8, 1923. When John Steffen returned from Minneapolis he delivered the order to Grace, and her claim is based upon this order, which is known in the record as Exhibit 1.

█ There are several assignments of error with reference to the receipt and rejection of evidence, but what appears to be the chief question is the validity of the order Exhibit 1. It is contended by appellant and admitted by respondent that the indorsement and delivery of the certificates of deposit constituted a gift causa mortis which was subject to revocation. The language of the indorsements on the certificates is too plain to admit of any doubt as to the character of the gift to Nick Davis, if in fact a gift was

made to him. As a gift causa mortis, it was subject to revocation (section 563, R. C. 1919), and might be revoked at the option of the donor. Appellant therefore contends that the act of Harry Davis in making and delivering the order, Exhibit 1, above quoted, was a revocation of the gift to Nick Davis, of certificate No. 8477 for $1,000, issued by the Citizens' State Bank of Andover, and effected a gift of such certificate inter vivos to appellant, Grace Steffen. Respondent contends that such order was ineffective for any purpose, being too indefinite to identify the certificate, and because a gift of the certificate to be effective would have to be accompanied by a delivery of the certificate to the donee. Respondent bank is interested only in paying the proceeds of the certificate to the person entitled thereto, and need not be further considered in discussing the questions now before us.

■ There are no words of revocation of, or any allusion to, a former gift, and if such gift was revoked it is because of the subsequent act of the donor in giving the same property to another. However, if the act of executing and delivering Exhibit 1 to appellant's father, with a request that he deliver it to appellant, which request was complied with, amounts to a gift of such certificate to appellant, then it also amounts to a revocation of the former revocable gift to Nick Davis, because, to make a valid gift of the certificate of deposit to Grace, there would have to be a valid delivery of the certificate to her, which could not be done without taking the certificate from Nick either actually or constructively and giving it to Grace. There is nothing in the record to indicate that this was done or attempted. There is nothing to show that Harry ever had the certificate in mind in connection with his gift to Grace. But it is apparent that he did have in mind the deposit covered by the certificate, for in his order he directs the cashier of the bank to turn over to Grace "the 1,000 dollars." The evidence shows that there was no other deposit of that amount in the bank, that, if there was any other deposit, it was only a small checking account, and that there was no sum whatever on deposit with the cashier personally, so, if the donor had any conception of what he was doing, there can be no doubt that he had in mind the money on deposit in the bank covered by the certificate and was trying to convey it to appellant. He was on a train in company with appellant's father and his brother Nick, and had asked to be

allowed to return so that he could make a will. It is not likely he remembered the number of the certificate, and, being a laborer on a railroad section, it is not remarkable if he did not understand the business details necessary to transfer the fund or the importance of assigning the certificate.. But, if he did not have the certificate in mind, he could not have intended to give it, and if he did not deem it important, there is no reason to infer that he intended to give it to Grace. There is not sufficient evidence to show a gift of the certificate to Grace. Much of the argument of appellant's counsel and citation of authorities are inapplicable to the facts of this case, because they have confused the certificate with the deposit. Although both parties concede that the delivery of the certificate to Nick was a gift, it is apparent that they both have in mind the certificate as the subject of the gift. But no one values the certificate except as an instrument to obtain the deposit. The deposit is the subject of the gift, if one was made, and is the property sought in this action. At the risk of departing from the theory of both sides, we must test the transactions involved with the deposit in mind as the subject of the gift.

Section 561, R. C. 1919, defines a gift as "a transfer of personal property, made voluntarily and without consideration," and section 565 provides that "a gift made during the last illness of the giver, or under circumstances which would naturally impress him with an expectation of speedy death, is presumed to be a gift in view of death." Under the circumstances presented by the record, we are satisfied that if a gift was made to either party it was a gift causa mortis and not inter vivos, and its validity must be tested by the rules governing such gifts.

 The doctrine of donatio causa mortis is derived from the civil law. The doctrine was received into the common law of England only so far as attended with delivery and other essential characteristics of a present gift. Ruling Case Law, vol. 12, p. 957, § 33, says:

"To make a gift causa mortis there must be clearly and intelligently manifested an intention to make a present gift to another, and, in consummation of this intention, a delivery of the property to or for the use of the intended donee, distinguishable, however, from a gift inter vivos in a circumstance that the donor intends that the gift is revocable or defeasible"—citing a large number of cases.

A delivery of the subject-matter of a gift causa mortis during the donor's lifetime is essential (Daniel v. Smith, 64 Cal. 346, 30 P. 575; Smith v. Ferguson, 90 Ind. 229, 46 Am. Rep. 216; Stokes v. Sprague, 110 Iowa, 89, 81 N. W. 195; Fearing v. Jones, 149 Mass, 12 20 N. E. 199, 14 Am. St. Rep. 392; Harris v. Clark, 3 N. Y. 93, 51 Am. Dec. 352; Hamor v. Moore, 8 Ohio St. 239), and after such delivery the donee's possession must be continuous, and the donor must have parted with all control and dominion over the subject-matter of the gift in favor of the donee (Daniel v. Smith, supra; Calvin v. Free, 66 Kan. 466, 71 P. 823; In re Hemphill's Estate, 180 Pa. 87, 36 A. 406). In other words, a gift causa mortis must be as essentially a gift as if made inter vivos. It cannot be a mere promise to give, or a legacy. Appeal of Walsh, 122 Pa. 177, 15 A. 470, 9 Am. St. Rep. 83, 1 L. R. A. 535; Dunbar v. Dunbar, 80 Me. 152, 13 A. 578, 6 Am. St. Rep. 166; Shackleford, Ex'r, v. Brown, 89 Mo. 546, 1 S. W. 390.

The delivery may be either actual or constructive, depending upon the circumstances under which the gift is made. There must be actual delivery of the thing given, if it is possible, and the delivery must be according to the manner in which the particular thing is susceptible of being delivered. Hart v. Ketchum, 121 Cal. 426, 53 P. 931; Cutting v. Gilman, 41 N. H. 147. The delivery need not be to the donee in person, if it be made to some one for him. Daniel v. Smith, supra; Woodburn v. Woodburn, 123 Ill. 608, 14 N. E. 58, 16 N. E. 209. What constitutes a sufficient delivery of a bank deposit has been before the courts many times. The delivery of a passbook for a deposit in a savings bank where the deposit may be paid upon presentation of a passbook, has been held sufficient; a check has been held sufficient where a check amounts to an assignment of the fund, and not sufficient where not an assignment of the funds. See notes in 27 L. R. A. (N. S.) 308; 10 Ann. Cas. 476; 9 Eng. Rul. Cas. 861; 60 Am. St. Rep. 278; 99 Am. St. Rep. 911; 18 L. R. A. 855. Delivery of a certificate of deposit with or without indorsement has been held sufficient delivery of the deposit. In short, a deposit is delivered, if the donee is given that which entitles him to the fund and gives him control over it as his own.

Measuring the purported gifts in this case by the foregoing rules, we find that Harry delivered a certificate of deposit

to Nick with the avowed intent of giving the deposit to Nick if he died. The certificate was not delivered with an unqualified indorsement or without indorsement. The indorsement was, "In case of death pay," etc., and the evidence shows this was in accord with a prior oral agreement between the brothers that, if either should die, the other should have deceased's property. No present gift is contemplated in such an arrangement, but it is testamentary in character. If the certificate had been delivered with the intent to make a present gift of the deposit, although revocable, it should be upheld as a gift causa mortis and not a legacy or testamentary disposition, although it might not have actually been drawn from the bank or passed to the credit of the donee; the transfer of the certificate being equivalent to a transfer of the fund . But where the indorsement was qualified as here, no ownership or control of the fund passed to the donee, because the bank is not authorized to pay unless in case of death, a time too late for the delivery of the gift. There was no gift of the deposit to Nick; consequently there can be no question of revocation for our consideration. Daniel v. Smith, supra; Smith v. Ferguson, supra; Stokes v. Sprague, supra.

Did Harry's acts in making and delivering the order to appellant constitute a present gift of the deposit to Grace? If the order was sufficient to authorize her to take immediate possession at the time she received it, and was sufficient to transfer the title and control of the fund to her, so that she might maintain an action in her own name to recover the fund if refused, then there was a valid gift to her.

The delivery of the fund was attempted by the execution and delivery of an order directed to the cashier of the bank holding the deposit. As an order, it was addressed to one having power to act on behalf of the bank to make the transfer of the fund, and is couched in language directing an immediate and present delivery. True there was an outstanding certificate of deposit which by its terms must be surrendered upon payment of the deposit, but the certificate was not then in possession of the donor, and it does not appear from the evidence that the donor had the means at hand at the time of making the gift to transfer the fund by a better delivery. Had he been so situated that he could have drawn the fund and presented the money itself, it might be that a gift

could not be made without such delivery of the deposit, or if he had the certificate he might be obliged to deliver that as the next best method to effect a delivery of the deposit. But he had a right to make the gift to Grace, and, if the only way he could make the transfer and delivery of the deposit to Grace was by the order, Exhibit 1, then the gift should be sustained. Was the order the best means under the circumstances to effect a delivery of the deposit, and is it sufficient as an instrument to deliver the deposit? It does not appear that the certificate was on the train with any one. It had been delivered to Nick. Nick was consulted as to the order; he knew what Harry was trying to do, and assured Harry the method employed was all right. He is in no position to complain because the certificate was not taken up and delivered. The order was an attempt to transfer the deposit.

We think it may properly be considered an equitable assignment of the fund transferring the title and constructive possession to Grace. An action might have been maintained on the instrument to compel payment, subject to the right of the bank to be protected against the outstanding certificate. The certificate had not been unconditionally transferred, but was held by Nick awaiting Harry's death, without validity in the hands of Nick, except as evidence of a deposit belonging to Harry, and of no validity after the gift to Grace.

The competency of Harry to make a gift does not seem to have been raised or considered. The trial court erred in directing a verdict for defendants.

The judgment and order appealed from are reversed, and the cause remanded for further proceedings in harmony herewith.

POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, P. J. (concurring specially). If there was ever a gift to the brother Nick, it was at most a gift causa mortis, and as such revocable either expressly or by subsequent inconsistent disposition.

When Harry Davis deposited $1,000 in the bank at Andover, the relation of debtor and creditor arose between himself and the bank, and the certificate of deposit issued to him was merely written evidence of the existence of the debt and a written memorandum of the due date and the terms and conditions for payment. Such certificate had no intrinsic value. What Harry Davis had to dispose of

by gift, if he so desired, was the debt due or to come due from the bank, a chose in action, of the existence of which the certificate was a testimonial. A debt is subject to gift, even if no written evidence thereof exists, and even though it is in essence so intangible as to be incapable of manual delivery, and the delivery thereof must be constructive. A frequent method of constructive delivery of the debt is by physical delivery of the outstanding written evidence thereof, if there be any such, with some conflict in the cases as to whether such written evidence must also be indorsed or assigned. But there is, I think, no reason to require some type of dealing with the outstanding written evidence of a debt, as a sine qua non of sufficient constructive delivery of the debt to support a gift thereof, if the intent to make the gift is otherwise sufficiently apparent, and if some other method of constructive delivery, reasonable and sufficient under all the circumstances, is adopted. Admittedly in such case the gift may be possible of subsequent defeat in enjoyment because of rights acquired by third persons through dealings with the outstanding written evidence of the debt, particularly if it is negotiable in form, and in some cases equity may conceivably require the donee of the debt to indemnify the debtor against possible injury by reason of the outstanding written evidence of debt, or even to get it in for surrender, before he will be permitted to collect the debt. But these considerations do not seem to me to affect the actual validity of the gift.

In the instant case the donor did not retain dominion over the debt by retaining the written evidence thereof. He had previously parted revocably with such written evidence, and is not shown to have had knowledge that it was present in possession of his brother at the time he executed the writing directing the cashier of the bank to pay the debt to appellant. If no written evidence of the debt had ever existed, certainly a writing by the creditor, delivered by him to a third person in behalf of the donee, directing the debtor to pay the debt to such donee sufficient in form to amount to an equitable assignment, would be a sufficient constructive delivery of the debt to support a gift. I do not think it is prevented from being sufficient by the mere fact that a written evidence of the debt was outstanding, and no action was taken with regard thereto. Failure to deal with the written evidence of debt at the time of making a gift, in view of the general custom of dealing

with the debt by dealing with the written evidence thereof, is probably material upon the question of the existence of an intent to give, but any inference therefrom unfavorable to the existence of such intent is open to be rebutted by the facts in the particular case, as here the fact that donor did not have possession of the written evidence and did not know it was present, or to be strengthened by the facts if they lend support thereto.

I am not unmindful of the rule generally stated in the texts that the delivery of the donor's check on his own bank account with the intention of making a gift of the amount thereof does not constitute a valid gift of such amount until it has been presented and paid or accepted. See 28 C. J. 659; 12 R. C. L. 945. The cases so holding turn on the point that a check is not an assignment pro tanto of the account against which it is drawn. That of course is the law in this state. Section 1891, R. C. 1919 (189 Negotiable Instruments Law). In the instant case, however, I do not think the order to Stone lies within the ambit of the rule as to checks. It is not in the customary form of a check—it is not drawn upon the bank, or upon a checking account therein; it is addressed to the managing officer of the bank, refers to a particular fund, and directs the payment of that particular fund and the whole thereof to the donee. It is, in my opinion, sufficient in form and substance to constitute an equitable assignment of that particular debt in toto. It could therefore constitute a sufficient delivery to support the gift.

Upon these considerations I am of the opinion that the learned trial judge erred in directing a verdict for respondents, and concur in the reversal.