# Estate of Elizabeth Hemphill. Appeal of Caroline G. Hunsworth.

*Decedents' estates—Gift—Donatio mortis causa—Evidence.*

At the audit of an executor's account a sister of the decedent claimed a large number of securities as a donatio mortis causa. It appeared that a certificate of deposit for the securities was found with some manuscript poetry in a wooden box which had belonged to the decedent. The evidence showed that the decedent had two boxes, one of wood and one of tin, in which she kept her papers, and that she had repeatedly told the claimant and others that she wished the claimant to have these boxes. She stated to a servant that the boxes were for the claimant, but she kept them in her own possession until late in the day preceding her death, and when she was unconscious the servant brought the claimant, who was in a room adjoining decedent's chamber, the boxes in question, saying, " Here, Mrs. H., are those two boxes which Miss E. said were for you, and wished you to have." She brought at the same time two tags, upon which the name of the claimant had been written at the decedent's request some days before, but whether the tags were attached to the boxes, or were simply lying on them, the witness was unable to say. The witness stated that she took the boxes of her own motion and gave them to the claimant. The decedent's whole estate consisted of a dwelling house, $7,300 in cash, some inexpensive furniture, and the securities amounting to over $30,000, represented by the certificate of deposit. The decedent by her will gave the claimant the house, but directed her to pay to each of two other sisters a sum equivalent to one third of the value of the house. The residue of the estate was divided amongst charities. The securities were not mentioned in the will. A witness against the claimant testified that nine days before decedent's death, decedent had told her that the box was to go to her sister, but that the valuable papers were to be sent to her counsel. *Held,* that the evidence was insufficient to sustain a gift to the claimant of the securities represented by the certificate of deposit.

Argued Jan. 15, 1897. Appeal, No. 478, Jan. T., 1896, by Caroline G. Hunsworth, from decree of O. C. Phila. Co., Jan. T., 1895, No. 420, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the adjudication of ASHMAN, J., which was as follows :

The testatrix bequeathed specifically various articles from among her personal effects, and she devised her house on Summer street to her sister Caroline Hunsworth in fee, charged with the payment of two legacies of $3,333 each to her sisters Ellen E. Girard and Virginia Rey, directing that said devise and legacies should be clear of collateral inheritance tax. She gave to Ellen Nolen $500, Annie Doyle $50.00, and Rachel Robinson $100, and to her executors power of sale of her real estate. The residue of her estate she ordered to be divided into twenty-two parts, and she gave six parts to the Philadelphia Home for Incurables, three to the Pennsylvania Industrial Home for Blind Women, two to the society for conducting St. Mary Street Library, two to trustees of the Philadelphia Protestant City Mission for their Consumptives' Home, three to the Presbyterian Board of Relief for Disabled Ministers and the Widows and Orphans of Deceased Ministers, two to the Children's Seashore House at Atlantic City, and two to the Presbyterian Hospital.

By codicil she bequeathed to Samuel Price, $1,000; Henry W. Paxson and Susan Spackman, each $100; Rev. William Patton, William H. Ingram, and Henry A. Ingram, each $400; Caroline Inglis, $200; Lizzie McNeil, Mary Preston, and Caroline R. Waite, each $50.00; and the West Laurel Hill Cemetery Company, $200 (the income to be applied to the care of her burial lot); the collateral inheritance tax on said legacies to be paid by her estate. The codicil was dated June 30, 1891. The testatrix died October 29, 1894.

Mrs. Caroline G. Hunsworth, a sister of the testatrix and a devisee under her will, presented a claim to certain securities as the subject of a gift to her causa mortis.

The evidence in its support, part of which was given by herself, was that the decedent had in her possession two boxes, one of wood and one of tin, in which she kept her papers, and that she repeatedly told the claimant and one or two others that she wished the claimant to have these boxes. On one occasion she said to the claimant, "There, Caroline, are those two boxes, and you have not taken them home with you; I wish you would write your name on them." To the question, "What did she say to you?" the claimant answered, "She said she wished me to have them; they were for me. Some of the contents of

both of the boxes she told me. Of course she did not go into the details as to all they contained." Further on the claimant testified, "She told me that poetry was in one box, and she told me many other things; various papers, she did not say what, but a copy of her will I would find in the tin box." The decedent also said to the nurse and to the servant that the boxes were for Mrs. Hunsworth; that the wooden box contained her poetry and the tin box contained valuables which she wanted the claimant to have.

Late in the day preceding that of the decedent's death the servant brought to the claimant, who was in a room adjoining decedent's chamber, the boxes in question, saying, "Here, Mrs. Hunsworth, are these two boxes which Miss Elizabeth said were for you and wished you to have." She brought at the same time two tags, upon which the name of the claimant had been written by the decedent's request some days before, but whether these tags were attached to the boxes, or were simply lying upon them, the witness was unable to say. The tin box, when opened, was found to hold a number of private letters, the will of testatrix's father, a deed for the cemetery lot, and some bills and receipts; and in the wooden box were found some manuscript poetry (the decedent having at one time published a small volume of poems) and a certificate of deposit, setting forth that certain securities, among others Lehigh Navigation bonds and city loan and a promissory note, which has since been paid, amounting in the aggregate to $31,465, were held by a trust company for safe keeping. All of the securities were in the name of the testatrix, and the note was drawn to her order. The claimant's case rests entirely upon this testimony. The best which can be said in its favor is that the evidence is a slender prop for so large a gift. It was not a donatio causa mortis for more than one reason, for it was not made in view of impending death. The latest occasion on which the decedent expressed a wish that the claimant should take the boxes into her custody was in August, about three months before she died. If, however, upon the declarations of the servant that the decedent had ordered her to deliver them after her death, but who admitted that at the time of the actual delivery the testatrix was unconscious, it shall be held that the gift was in anticipation of death, it is still certainly true that

the decédent never gave the articles into the custody of the witness for that or any other purpose. The girl swore that she took them of her own motion, and before the death, from the mantelpiece or other spot where they had always stood. Assuming that the decedent's wish that the claimant would take the boxes, accompanied by the directions to the servant to hand them after her death to the claimant, together constituted a completed gift, and assuming further, as a legal inference, what the witness did not say was ever expressed by the testatrix, that the gift of the boxes was meant to carry with it their contents, the pertinent inquiry remains whether the testatrix knew their contents herself. On this vital point the claimant could only affirm that the decedent told her some of the articles, " poetry and various papers, she did not say what," and with incomparable simplicity she added, " Of course, she did not go into the details as to all they contained." Yet some of those details which, " of course," were too trivial to be mentioned in the same breath with the poems, were first-class securities worth $30,000 at par, and all or nearly all of them commanding a premium. Outside of those securities the decedent's whole estate consisted of her dwelling house and $7,300 in cash and some inexpensive furniture. At the very time of the alleged gift, and for three years preceding it, the decedent's will was in existence by which she devised her house, and gave her furniture in specie, and $3,600 of the cash in pecuniary legacies. It is scarcely within the border line of probability that she would have directed so meagre a residue as would have been left to be divided into twenty-two parts and parceled out among seven prominent charities. But other doubts arise under the will. It gave the dwelling house to the claimant, but incumbered the gift with the obligation to pay to each of her two sisters $3,333. It was not pretended, and the auditing judge is able to say that it could not well have been pretended, that the house was worth much if any more than $10,000, so that the will explicitly showed that the claimant was to take only an even interest with her sisters. It disclosed another feature of the testatrix's intention as to the boxes. The claimant was given the decedent's manuscripts, photographs, and the remaining copies of her poems, and these were designated as being " principally in the yellow box with lock and key." The claimant herself

declared that the decedent always described the boxes as "her tin box and her little yellow wooden box." The certificates for the securities were found in the wooden box. Are we to believe that a testatrix who was thus careful to enumerate her manuscripts and photographs in her will would have omitted all mention of a fortune in securities, when she intended to make a gift of them equally with the former articles to the same person?

If the claim will not stand upon the evidence submitted by the claimant, it is not worth while to treat at any length the evidence which was produced against it. Very briefly stated, it was that the decedent had consulted a gentleman connected with a trust company as to the disposition of certain of her private papers, which, to use her own words, she did not care that everybody should see, one of the papers being an original poem in manuscript. He advised her to make the papers into a package and place them in that shape in one of the boxes, and to label the box for Mrs. Hunsworth, the fact that the box was to go to Mrs. Hunsworth appearing in the will, which he had read. He had previously been requested by the decedent to keep the boxes himself, but declined. A day or two before the death he handed the tags, properly filled, to the servant, the decedent being in a state of unconsciousness.

On October 20, nine days before decedent's death, a friend called upon her and found her in a state of some excitement, caused, as the decedent explained, by the labor of going over her business affairs with her agent. She added that the papers in the box were yet to be examined; that the box was to go to her sister, but the valuable papers, by which the witness understood the stocks and bonds, were to be sent to her counsel, and that she and her agent would complete the examination in the ensuing week. She declared further that she would label the box for Mrs. Hunsworth, and would send the papers to counsel. The servant who brought the boxes to the claimant swore that she did so at the solicitation of the claimant herself, who assigned as a reason for her request that they probably contained directions for the funeral. She also asserted that the decedent at one time had told her that the boxes were to go to her agent, and afterwards that she intended them for the claimant.

The facts and the legal inferences therefrom may be summed up—

1. That as to the boxes, the decedent manifested no more than an intention to give them to the claimant, and that her direction to the servant to hand them over after her death did not constitute a delivery, because the articles did not, with her knowledge, leave her possession, nor did she at any time relinquish, knowingly, her dominion over them.

2. That as to the securities, she never intended to give them to the claimant at all.   On the contrary, she expressly declared that they were to be transmitted to the counsel who was to settle her estate.   So far as the mere boxes are concerned— a matter of trifling moment, because they were worth little or nothing except as mementos—the case is very similar in its incidents to Fross & Loomis's Appeal, 105 Pa. 258, where a decedent said he wanted the donee to have a note or its proceeds when collected, the note being then in the custody of the person who afterwards administered to his estate.   It was held there was no delivery, and that the claim could not be sustained, either as a gift inter vivos or causa mortis.   If the boxes were not validly given, their contents shared their fate, leaving out of view even the positive intention respecting them which the testatrix evinced.   It would be an interesting point for discussion, if the facts of the case were in the least doubtful, whether the choses in action represented by the trust company's receipts could have passed effectually to the donee as a gift mortis causa by a merely manual delivery.   The delivering in gifts of that character is conditional, because the gift itself is revocable, and it may be argued from Lord ELDON's remarks in Duffield v. Elwes, 1 Bligh, N. S. 536, that the legal representatives of the deceased donor would be compelled to make the formal assignment.   In gifts inter vivos, however, the donor irrevocably strips himself of the ownership, and a mere manual delivery would leave the gift incomplete.   The opinion in Walsh's Appeal, 122 Pa. 177, seems to obliterate this distinction, although it actually determines only the single point that the delivery of a bank book is not a valid assignment of the moneys noted in it.   It may be remarked as to that case that the saving-fund deposit book which was the subject of the attempted gift, differed from an ordinary bank book in this, that it was required to be produced in lieu of a check when money was withdrawn by a depositor, and that the saving fund, and not

the depositor, took possession of it when the deposit was closed. In delivering the book to the donee the donor gave up his control over the fund, a fact which does not appear to have been made known to the court. Scott v. Lauman, 104 Pa. 593, referred to in that opinion, was decided upon the ground on which the auditing judge is willing to dispose of this case, the absence of delivery. For the sake of argument, and to say all which can be said for the claimant, he is ready to assume, what the proofs contradict, that the boxes and their contents were intended to be given her, and that the contents, including the choses in action, would pass by mere delivery. But the directions to the servant to hand them to the claimant, when in point of fact they continued in decedent's custody until she became unconscious, did not make valid delivery, and the attempted gift was void. The claim is rejected.

The court dismissed exceptions to adjudication.

*Errors assigned* were in dismissing exceptions to adjudication.

*Geo. Tucker Bispham* and *J. Howard Gendell*, with them *Henry A. Ingram*, for appellant.—Where the gift assumes the shape of a voluntary declaration of trust in which the donor himself designates himself as trustee, no delivery is necessary: Smith's Est., 144 Pa. 428; Crawford's App., 61 Pa. 52.

An owner of personal property may impress upon it a valid present trust, either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party upon certain specified trust: Smith's Est., 144 Pa. 435; Dickerson's App., 115 Pa. 198: Trust Co. v. Mellor, 156 Pa. 579.

The rule being, as to gifts inter vivos (ordinarily so called), that a declaration by the donor that he holds in trust for the donee is equivalent to a delivery of the subject-matter of the gift, it necessarily follows, that if the elements necessary to a complete gift in donationes mortis causa are the same as those in gifts strictly inter vivos, that where a donor declares himself to be trustee, the declaration is equally sufficient in the former as in the latter class of cases: Austin v. Mead, 15 Ch. D. 651; Com. v. Crompton, 137 Pa. 147.

There was sufficient evidence to show that it was the intention of the decedent to give the securities contained in the tin

box.   That the delivery of the certificate of deposit of the trust company is a good delivery of the articles mentioned therein is apparent from Shakespeare v. Fidelity Co., 67 Pa. 173; Parks v. Smith, 94 Pa. 46.

*John Marshall Gest*, for appellees.—Mrs. Hunsworth, the chief witness in behalf of her own claim, was incompetent to testify: Act of May 23, 1887, P. L. 158; Hunt's App., 100 Pa. 590.

There was no delivery of the subject of the alleged gift nor anything equivalent to it: Wells v. Tucker, 3 Binn. 370; Headley v. Kirby, 18 Pa. 328; Michener v. Dale, 23 Pa. 59; Smith's Est., 144 Pa. 428; Crawford's App., 61 Pa. 52; Com. v. Crompton, 137 Pa. 147; Dickerson's App., 115 Pa. 198; Walsh's App., 122 Pa. 177; Austin v. Mead, 15 Ch. Div. 651; Zimmerman v. Streeper, 75 Pa. 150; Trough's Est., 75 Pa. 115.

On the merits of the case, Miss Hemphill never had the slightest intention of giving the securities to the claimant. Under the ruling in Walsh's Appeal, the delivery of the certificates of deposit, even if proved, would not constitute a valid assignment of the bonds represented by it.

PER CURIAM, January 25, 1897:

The facts of this case sufficiently appear in the adjudication of the learned auditing judge.   As stated by appellant, there was a petition and a demurrer thereto, but they were practically superseded by the proceedings on the settlement of the executor's account.

The assignments of error are to the action of the court in banc dismissing appellant's twelve exceptions to the adjudication and confirming the latter.   The controlling question presented by the specifications was fully considered and correctly decided by the learned auditing judge.   It is unnecessary to add anything to what he has so well said, and we therefore affirm the decree on his opinion and dismiss the appeal at appellant's costs.