## Cooper's Estate.

*Decedents' estates—Ownership of certificate of ·deposit—Gift inter vivos—Delivery—Jurisdiction — Competency of witness — Evidence.*

1. Where certificates of deposit are in the actual possession of a decedent at the time of her death, but are claimed by the executrix as a gift inter vivos from the decedent, the Orphans' Court has jurisdiction to determine in limine the question of the ownership of the certificates. Cutler's Estate, 225 Pa. 167, explained and distinguished.

2. If the court reaches the conclusion that the gift was imperfect, because not executed, the right to take jurisdiction follows necessarily, depending of course upon the soundness of its conclusion, which is subject to revision by the appellate court.

3. In such a case the executrix is not a competent witness in her own behalf; but even if she were, her testimony would be insufficient to establish her claim, if it is in effect that she was the housekeeper of the testatrix who was her aunt; that the latter had promised her a house; that on her declining the house, her aunt, three years before she·died, came to her one day with an envelope containing the certificates in question, saying "as long as you do not want the house......these are the certificates for you as I intend fixing up my affairs," that testatrix took the certificates from the envelope and gave them to her, but immediately took ·them back, placed them in the envelope and put them back in the drawer where she had always kept them; that subsequently the niece took the certificates, as her aunt's agent, to a bank to collect the interest; that the bank then issued new certificates in the name of the aunt, and that these were replaced in the same drawer where the old certificates had always been kept.

4. A gift is a voluntary transfer of a chattel completed by delivery of possession. It is the fact of delivery that converts the

unexecuted and revocable purpose into an executed and therefore irrevocable contract.

Argued Oct. 3, 1918. Appeal, No. 3, Oct. T., 1918, by Annie A. McCoy, from decree of O. C. Lawrence Co., March T., 1915, No. 24, dismissing exceptions to report of auditor in Estate of Anna C. Cooper. Before STEWART, MOSCHZISKER, FRAZER, SIMPSON and FOX, JJ. Affirmed.

Exceptions to report of Wm. K. Hugus, Esq., auditor.

The case turned on whether certain certificates of deposit in the possession of the decedent in her lifetime had been given by her as a gift inter vivos to the appellant.

The auditor found against the claim of the appellant, and exceptions to his report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to the auditor's report.

*J. Clyde Gilfillan,* with him *J. Norman Martin,* for appellant.—The Orphans' Court had no jurisdiction: Williams' Est., 236 Pa. 259; Paxson's Est., 225 Pa. 204; Cutler's Est., 225 Pa. 167.

Appellant was a competent witness: Allen's Est., 207 Pa. 325.

The evidence was sufficient to support a gift inter vivos: Leitch v. Diamond National Bank, 234 Pa. 557; Osterhout's Est., 148 Pa. 223.

*C. H. Akens,* for appellees.—There was no gift: Ashman's Est., 223 Pa. 543; Smith's Est., 237 Pa. 115; Maxler v. Hawk, 233 Pa. 316; Reading Trust Co. v. Thompson, 254 Pa. 333; Clapper v. Frederick, 199 Pa. 609; Basket v. Hassell, 107 U. S. 602; Sullivan v. Hess, 241 Pa. 407.

Claimant was not competent: Wise's Est., 182 Pa. 168; Osterhout's Est., 148 Pa. 223; Lavelle v. Melley, 27

Pa. Superior Ct. 69; Patterson v. Dushane, 115 Pa. 334; Smith v. Hay, 152 Pa. 377; Irwin's Est., 160 Pa. 82; Reading Trust Co. v. Thompson, 254 Pa. 333; Kotz v. Smith, 253 Pa. 346.

The following cases determine the question of jurisdiction in our favor: Cutler's Est., 225 Pa. 167; Paxson's Est., 225 Pa. 204; Williams' Est., 236 Pa. 259; Turner's Est., 244 Pa. 568; Weller's Est., 247 Pa. 196.

OPINION BY MR. JUSTICE STEWART, January 4, 1919:

This controversy arises upon exceptions filed to the final account of the executors of Anna C. Cooper, late of Lawrence County, deceased. The appellant was the executrix of the will and one of the accountants. The account as filed contains this notation: ".The following certificates of deposit issued by the National Bank of Lawrence County in the possession of the executors are claimed by Annie A. McCoy as her property, she claiming that Anna C. Cooper, the decedent, gave and delivered the same to her in the lifetime of decedent as compensation for services rendered by her to the decedent." Then follows an itemized statement of the several certificates with their respective dates and amounts, aggregating, with the interest accrued, $9,002.25. The legatees excepted to the account as stated on the ground that the certificates mentioned should have been accounted for as assets of the estate, and asked for a surcharge to that extent. The matter was referred to an auditor who had been appointed to make distribution. He reported adversely to the appellant's contention, holding, "that the evidence produced is not sufficient to establish title to the certificates of deposit in claimant during the lifetime of decedent, but that said certificates constitute a part of the assets of the estate which passed by the last will and testament of Anna C. Cooper, and that the executors should account for them to said estate." The auditor thereupon restated the account, surcharging accountants with the omitted certificates of deposit.

This report was recommitted to the auditor to take additional testimony, in particular the testimony of one W. J. Carlin. No additional testimony touching the merits of the case seems to have been taken beyond the production of a deposition of W. J. Carlin, which was produced mainly for the purpose of supporting a claim made before the auditor that a precept issue to the Court of Common Pleas to try the question of fact as to the ownership of the certificates in question. The auditor on this recommitment declined to recommend the granting of an issue and revised the schedule of distribution reported in his earlier report only so far as to provide for the additional costs and expenses occasioned by the recommitment. The final report of the auditor was confirmed by the court, after full consideration of the exceptions filed, in an opinion which is itself excepted to. Following the line of argument adopted in the brief for the appellant, the first question to be considered is that which challenges the jurisdiction of the Orphans' Court over the subject-matter of the controversy. We shall assume that this question was raised in proper time and in the proper way in the court below. As we view the question these are matters of minor importance, and entirely subordinate to the main question: has the Orphans' Court jurisdiction of the subject-matter? In the comparatively recent case of Cutler's Est., 225 Pa. 167, a case much relied on by the appellant's counsel as sustaining their present contention that the Orphans' Court was without jurisdiction, we found occasion to say "it is a doctrine equally familiar that once the jurisdiction attaches, the court has full power to inquire into and determine all questions standing directly in the way of a conversion and distribution of the property, that is, the property of the decedent. Stated conversely, the jurisdiction of the Orphans' Court is limited to the estate of which the testator died seized. With respect to such estate, it has full jurisdiction; but this marks its ultimate limit. Whether a specific article of property belongs to

the estate, is a question standing in limine; if it does not, the executor is not accountable therefor, and it is beyond the power of the court to control it in any way or charge liability on any one in connection therewith. Presumably every item of property an executor has included in his inventory belongs to the estate, and for all such he must account. The inventory is an admission on his part that the property embraced in it came into his possession as a legal representative of the testator. If it be claimed the testator owned other property which either came or should have come into the hands of the accountant, the burden is upon the parties so claiming to show first of all that the omitted property was the property of the testator. Where this is denied and a claim of ownership in another is set up, may not the court inquire as to the fact in issue? Within certain limits, unquestionably it may. If at the testator's death, the property is shown to be in his possession, or, if for any other reason, it was presumably his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction; but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists. If the dispute be a substantial one, and the title be really involved, may the court further proceed to settle and determine the matter in dispute? Certainly no authority to do so can be found within the terms of the statute, and we think it quite as clear that it cannot be implied from anything in the act." The extract here given can be understood in its true significance only as we have the facts of that case before us. The two cases were wholly dissimilar with respect to the one controlling feature. In that case the effort was to surcharge the accountant with certain securities and money which it was claimed belonged to the estate. The answer denied such ownership, and alleged that a year or more before the testator's death he had transferred to the claimant the property, the subject of the dispute, by virtue of several written and sealed instruments which

the claimant produced. The genuineness of the signatures to these several instruments was not denied, nor was the sufficiency of the evidence to establish the gift questioned on any other ground than that the decedent at the time he made the gift was not of sound and disposing mind. It was not pretended that the securities and money, the subject of the alleged gift, were in the possession or under the control of the decedent at the time of his death, or that any presumption of ownership in him at that time arose. The only question there sought to be raised was the mental capacity of the donor a year before his death to make a valid gift. We held that the Orphans' Court was without jurisdiction to try that question inasmuch as the power of the court was limited by Sec. 19, par. 8, of the Act of 16th June 1836, P. L. 784, to "cases within their respective counties wherein executors, administrators, guardians or trustees may be possessed of, or are in any way accountable for any real or personal estate of a decedent." Our conclusions were expressed in the excerpt above given. We feel that we ought not now be called upon to explain that where the phrase "substantial dispute" occurs in the opinion the reference is to some dispute touching the ownership or possession of the property by the testator at the time of his death, which circumstance is essential to the jurisdiction of the court. It is enough to say that the language employed admits of another construction, and that is the governing distinction between the two cases. It was not pretended that the property there in dispute was owned and possessed by the testator at the time of his death; on the contrary it was admitted that a year before he had severed it from his estate by executed contract whereby he assigned and transferred the same to his daughter. This put the legal title in the daughter, and so title and possession both passed out of the donor before his death. It seems to be trifling with words to contend that there was a substantial dispute within the meaning of the court in

the case cited. The only question here presented for the consideration of the court was, does the evidence submitted by the plaintiff show a legally executed gift inter vivos of the property in dispute? This was a pure question of law, one that the Orphans' Court was as competent to pass upon as any other court; the question stood in limine and had to be disposed of before jurisdiction could be either denied or assumed. When the court reached the conclusion that the gift was imperfect, because not executed, its right to take jurisdiction followed necessarily, depending of course upon the soundness of its conclusion, which is the one matter here for review. Was the evidence in support sufficient in law to establish even a prima facie case? The burden of proof was on the claimant to overcome an adverse presumption. She accepted that burden and at the hearing before the auditor she was admitted to testify, under objection as to her competency as a witness, fully as to the circumstances attending the alleged gift. Aside from herself there was but one other witness who was present on the occasion when the gift was said to have been made, but that witness was not called. The auditor subsequently ruled that the claimant was an incompetent witness, and disregarding her testimony ruled that "Annie A. McCoy being an incompetent witness there is no direct evidence of a gift, of which the evidence of several witnesses for claimant might have tended to coöperate, but with the certificates of deposit standing in the name of the decedent and in her possession, the auditor believes that the only safe guide to follow is the provisions of the will which disposes of all the assets of the decedent." The court sustained the ruling of the auditor as to the incompetency of the witness and in disregarding her testimony. This ruling, excepted to, is assigned as error. In the discussion of this question it is only necessary to mark the distinction between the facts of this case and Allen's Est., 207 Pa. 325, the latter being the one authority upon which counsel for appellants rely to support their pres-

ent contention. In the case cited the controversy over distribution was confined to the two children of the testator, and was limited to the contention of the daughter that the son should be charged with what she alleged were advancements made to him by the father. The son was called as a witness on his own behalf, and, under objection on the part of the sister, testified fully as to what occurred between his father and himself in relation to the moneys hě received. The court sustained the view adopted by the auditor, and upon appeal to this court a like result was reached. The question of disability in that case, as here, arose under the Act of 1887, Sec. 5, which provides "that where any party to a thing or contract in action is dead......and his right thereto or therein has passed either by his own act or by the act of the law to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract or any other person whose interest shall be adverse to the said right of such deceased ......be a competent witness to any matter occurring before the death of said party......unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." The governing consideration which led to an affirmance of the court below was the fact that the advancement to the son, about which there was no dispute, once made, formed no part of the property or estate of decedent thereafter, and "that no right of the father thereto or therein passed either by his own act or by the act of the law, to a party on the record and the son was not therefore within the incompetency of clause e, Sec. 5, of the Act of 1887." Further, it was there held that the case fell under the exceptions contained in the act. To apply the act to a case such as the present is to beg the very question in issue; it would be an assumption that

the gift to the claimant had been made, and that its substance had been parted with and had ceased to be a part of the property of the decedent before his death. In the Allen case the advancement by the father was admitted, and the reduction of his estate pro tanto, and the controversy was not between parties respectively claiming such property by devolution on the death of the owner. But, aside from this, and assuming the transaction between testatrix and claimant to have been just as described by her, to what extent is the claimant advantaged? These in brief are the facts as disclosed by the appellant's testimony. Anna C. Cooper, the testatrix, a childless widow, died Sept. 5, 1913, having made her last will the 24th of April, 1913. The appellant was a niece of Mrs. Cooper and lived with her as housekeeper for four or five years next preceding her death. Testatrix possessed certificates of deposit interest bearing, issued by the Lawrence Saving & Trust Company, and others issued by the National Bank of Lawrence County, and had given appellant a power of attorney to collect the interest on these certificates as they fell due, the same to be applied by her toward household expenses. Testatrix had frequently spoken to claimant of her intention to reward her for her services and kindness by giving her the house and lot in which they were living. Because appellant's home was in Chicago she had told her aunt she did not want the house and lot. In December, 1912, her aunt came down stairs with an envelope containing certificates of deposit issued by the National Bank of Lawrence County and addressing the plaintiff, said "Now, Anna, I'm going to fix up my affairs very soon, and here are the certificates in place of the house as long as you do not want the house, and there are a few notes that will come in that will make up the amount. Those are the certificates for you as I intend fixing up my affairs." Testatrix took certificates out of the envelope and gave them to her. There were three or four of them aggregating $8,850; appellant then helped her aunt upstairs and she,

the aunt, took the certificates, replaced them in the envelope, put them in the drawer, locked the drawer; the same drawer from which she had taken them and in which they had usually been kept and "to which we both had access." Prior to the death of testatrix the four certificates that were in the house in December, 1912, were taken by the claimant, acting as the agent of the testatrix, to collect the interest, and had new certificates issued in their stead which are the certificates in suit. These new certificates issued to the testatrix in her name were brought home from the bank by the claimant and placed by her in the same envelope in the same drawer in the bureau of the testatrix, and in the latter's own home, thus restoring them to the same custody and under the same control they had been in before, and so they remained until the testatrix's death. Whether this alleged gift was enforceable as a contract is aside from the present inquiry. This question was not raised and we express no opinion in regard to it. The claim is based exclusively on the ground that it was an executed gift inter vivos. How far short the evidence comes of establishing such gift is too manifest to admit of question. We need do no more than call to mind what a gift inter vivos is and some of its essentials. "A gift," says Mr. Justice WILLIAMS in Walsh's App., 122 Pa. 177, "is more than a purpose to give, however clear and well-settled that purpose may be. It is a purpose executed. It may be defined as a voluntary transfer of a chattel completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract...... There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee irrevocably. In the case of money on deposit or loaned out, the certificate of deposit or bill, note or bond may be delivered properly endorsed

and it will confer on the donee an absolute title of the fund represented by it, but if there remains something for the donor to do before the title of the donee is complete, the donor may decline further performance and resume his own." This case is in line with Bond v. Bunting, 78 Pa. 210; Michener v. Dale, 23 Pa. 59, and many others which might be cited. The appellant's case as exhibited by herself is utterly lacking in these requirements. Not only does it fail to show such delivery of the certificates of deposit as the law requires in order to establish a valid gift, but it shows a retention of possession and ownership of them by the alleged donor down to her death. The case requires no further discussion.

The assignments of error are overruled and the decree of the court affirmed.