## Albright and Adams, Executors, etc., v. Lenhart.

*Replevin—Affidavit of defence — Sufficiency — Gift inter vivos — Donatio causa mortis.*

The executors of the will of a decedent brought this action of replevin to recover four certificates of deposit which had been delivered to the defendant by the decedent along with certain other things in a box. The affidavit of defence averred that the decedent had delivered the box to the defendant, saying: "Keep this for me. It will be safer with you than in my house." The box was locked at the time and the decedent kept the key. Some time later the decedent told the defendant: "In case anything happens to me you break it open and you take the first choice of pins and your mother the second, and the remaining jewelry divide in lots as you see fit for Myron's children. There is also a little money in the box, which you divide equally among yourself and Myron's children, etc." The decedent subsequently made a will appointing the plaintiffs her executors. The will was manifestly complete and appeared to dispose of all the testatrix's property, but it made no particular reference to the box in question or to its contents: *Held*, the affidavit of defence was insufficient to prevent judgment for plaintiffs, since the facts stated did not establish either a gift *inter vivos* or a *donatio causa mortis* as to the certificates of deposit which were in the box.

Motion for judgment for want of a sufficient affidavit of defence. C. P. Dauphin Co., March T., 1921, No. 526.

*John R. Geyer*, for plaintiffs.

*James G. Hatz* and *George R. Barnett*, for defendant.

WICKERSHAM, J., April 7, 1922.—This case comes before us upon a motion for judgment for want of a sufficient affidavit of defence, and, therefore, all the relevant allegations therein must be taken to be true. Therefrom it appears that some time in the month of July, 1917, Alberta Albright came to the home of the defendant in the City of Harrisburg, bringing with her a tin box, which she handed to the defendant, saying: "Keep this for me. It will be safer with you than in my house." The box was locked at the time of its delivery to the defendant, the said Alberta Albright retaining the key; nothing was said by her as to the contents of the box.

In September, 1919, the said Alberta Albright visited the defendant, asked for the box, which was delivered to her, which she opened and took therefrom some pieces of jewelry. She then locked the box and redelivered it to the defendant.

Some time in the month of September, 1920, the said Alberta Albright again visited the home of the defendant and said to her: "Bertha, you remember that box I gave you. In case anything happens to me, you break it open and you take the first choice of pins and your mother the second, and the remaining jewelry divide in lots as you see fit for Myron's children. There is also a little money in the box, which you divide equally among yourself and Myron's children. You know their father is dead and they are in the Moose-Hart Home in Illinois, and I feel that I would like to do a little more for them than the rest. The rest will have plenty without that."

Some two months after this conversation, to wit, on the —— day of November, 1920, the said Alberta Albright made her last will and testament, in which, after making numerous specific bequests, she bequeathed all the rest, residue and remainder of her estate, whatsoever kind and wheresoever situate, to her nieces and nephews (naming them therein), share and share alike, and in said last will and testament she appointed the plaintiffs the executors, which will was probated and letters testamentary issued thereon Jan. 6, 1921.

The said Alberta Albright died Jan. 2, 1921, and thereafter the defendant broke open the box and found therein certain jewelry and four certificates of deposit in the West End Trust Company of Philadelphia of the face value of $2900. The defendant notified William Albright, one of the executors named in the will of the said Alberta Albright, that the box was in her possession and furnished him with a schedule of its contents, but she refused to surrender the said box or its contents to the plaintiff; whereupon they, the said plaintiffs, caused to be issued from this court a writ of replevin to recover the possession of said four certificates of deposit. After the service of said writ of replevin, the defendant surrendered the said certificates of deposit to the executors named in the will of the said Alberta Albright, but she still has in her possession said box and the jewelry therein contained.

The plaintiffs filed their statement of claim Aug. 20, 1921, alleging that the decedent, Alberta Albright, at the time of her death, was the owner of said four certificates of deposit which were in the possession of the defendant and which were recovered from her by the said writ of replevin, and alleging that this action is brought to determine the plaintiffs' right, title and right of possession in and to the said certificates in the said writ and in said statement described, and for which the plaintiffs claim judgment that the same shall be adjudged their property. The defendant filed her affidavit of defence Jan. 30, 1922, alleging her title to said four certificates to be supported by the facts substantially as we have above stated them, which affidavit of defence the plaintiffs claim is insufficient in law to sustain a judgment in favor of the defendant, and move for judgment for want of a sufficient affidavit of defence, for the reasons:

1. That the facts as pleaded by the defendant do not constitute a gift *inter vivos*.

2. That the facts as pleaded by the defendant do not constitute a gift *causa mortis*.

3. That the disposition of the property, if testamentary in its character, is void as a nuncupative will, and no attempt has been made to prove it as such. If it was a testamentary disposition, it is revoked by the later will of the defendant.

2 D. & C.

4. That, in any event, any gift of the securities was invalid because it is incomplete, the certificates not having been endorsed.

It is not seriously contended by counsel for the defendant, under the admitted facts alleged in the affidavit of defence, that a gift *causa mortis* has been established. The conversation between Alberta Albright and the defendant occurred in September, 1920, at which time there is no allegation that the said Alberta Albright was in ill-health. A mere gift made in prospect of death and professing to pass to the donee all of the property of the decedent, consisting of wearing apparel, a promissory note, a book of deposit in a savings fund society, etc., to take effect after death, is not valid as a *donatio causa mortis*, whether accompanied by delivery or not: Headley *v.* Kirby, 18 Pa. 326; but there is no suggestion in the affidavit of defence that there was a gift made in this case "in prospect of death," and, therefore, the donor not being in her last illness or *in periculo mortis*, a claim that this was a *donatio causa mortis* cannot be sustained: Gourley *v.* Linsenbigler, 51 Pa. 345; McHale, Admin'x, *v.* Toole et al., 258 Pa. 293.

Do the facts pleaded by the defendant support her claim that there was here a gift *inter vivos?* A gift is a voluntary transfer of a chattel, completed by delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract: Cooper's Estate, 263 Pa. 37.

"A gift," says Mr. Justice Williams, in Walsh's Appeal, 122 Pa. 177, "is more than a purpose to give, however clear and well settled that purpose may be. It is a purpose executed. It may be defined as a voluntary transfer of a chattel, completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract. . . . There must be a purpose to give; this purpose must be expressed in words or signs, and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee irrevocably. In the case of money on deposit or loaned out, the certificate of deposit or bill, note or bond may be delivered, properly endorsed, and it will confer on the donee an absolute title of the fund represented by it; but if there remains something for the donor to do before the title of the donee is complete, the donor may decline further performance and resume his own:" Per Stewart, J., in Cooper's Estate, 263 Pa. 37, 46; McHale, Admin'x, *v.* Toole et al., 258 Pa. 293; Flanagan *v.* Nash, 185 Pa. 41; Sisco's Estate, 63 Pa. Superior Ct. 147-149.

Measured by the rule that to establish a gift *inter vivos* there must exist more than a purpose to give, which purpose must be expressed in words or signs, and must be executed by the actual delivery of the thing given to the donee so as to vest a present title in the donee irrevocably, the facts alleged in the affidavit of defence utterly fail to establish such a gift on the part of the donor, Mrs. Alberta Albright; there remained something for the donor to do before the title of the donee was complete, to wit, to endorse the certificates of deposit and to surrender the key to the box in which they were enclosed to the donee, the defendant; therefore, her claim that these certificates of deposit were given to her by the donor is not sustained by the authorities above quoted and other authorities which we will now proceed to examine.

In the matter of Hemphill's Estate, 180 Pa. 87, the facts were to some extent similar to those at bar. The testatrix had some valuable securities, together with poetry and other papers, in two boxes, which it was claimed she presented to the claimant, her sister, in the following words: "There, Caroline, are those two boxes and you have not taken them home with you;

I wish you would write your name on them." At another place the claimant testified: "She said she wished me to have them; they were for me. Some of the contents of the boxes she told me. Of course, she did not go into the details as to all they contained. . . . She told me that poetry was in one box and she told me many other things; various papers, she did not say what, but a copy of her will I would find in the tin box." Commenting upon this testimony, it was said by Ashman, J. (page 90): "Assuming that the decedent's wish that the claimant would take the boxes, accompanied by the directions to the servant to hand them, after her death, to the claimant, together constituted a completed gift, and assuming further, as a legal inference, what the witness did not say was clearly expressed by the testatrix that the gift of the boxes was meant to carry with it the contents, the pertinent inquiry remains whether the testatrix knew the contents herself. On this vital point the claimant could only affirm that the decedent told her of the articles, 'poetry and various papers, she did not say what,' and with incomparable simplicity she added, 'of course, she did not go into the details as to all they contained.' Yet some of those details which, 'of course,' were too trivial to be mentioned in the same breath with the poems, were first class securities, worth $30,000 at par, and all or nearly all of them commanding premiums."

Now the claimant in the case at bar contends that the testatrix told her, in case anything happened to her, to break open the box, select a pin, allow her mother to select another pin, and then divide the jewelry in the box. She then stated, "there is also a little money in the box, which you divide equally among yourself and Myron's children." Can it be said with any reason that four certificates of deposit of the face value of $2900, together with accrued interest for many years, could, by the greatest stretch of the imagination, be construed to mean "a little money?" It is further argued by counsel very earnestly that because the testatrix did not mention these securities in her last will and testament, made about two months after said conversation with regard to the contents of the box was supposed to have taken place, that, therefore, she had conscious knowledge that she had already disposed of the contents of the box. Are we to believe that a testatrix who was so careful as to enumerate in her will how all of her property was to be divided, naming a long list of her nieces and nephews who were to receive the residue of her estate, would have omitted all mention of a fortune in securities, when she intended to make a gift of them equally with the defendant and some of her other nephews? We do not think this contention is sound, and that any safe conclusion can be deduced from the failure of the testatrix to mention the above named securities in her last will and testament.

We do not find anything in the words used by the testatrix, as set forth in the affidavit of defence, which indicates her intention to make a gift to the defendant then and there; nor do we find by her actions such an actual or constructive delivery of said box and its contents at the same time to Mrs. Lenhart as divested the donor of all dominion over the subject and invested the donee therewith: Ashman's Estate, 223 Pa. 543. It appears that the alleged donor kept the key of the box in her possession until she died; that when the box was handed to the defendant, it was accompanied with the words, "keep this for me." And, lastly, defendant was instructed by said Alberta Albright, two months before she made her last will and testament, that she, the defendant, should break open the box if anything happened to the said donor, and dispose of some jewelry in the said box and divide a little money; but, as we have stated, the key remained in the hands of the donor,

2 D. & C.

and there does not appear to be anything in the record to show that the donor could not at any time have demanded and taken again into her own custody the said box. Furthermore, the said certificates of deposit were not endorsed, and there remained something for the donor to do before the title of the donee to said certificates of deposit was complete: Cooper's Estate, 263 Pa. 37. We do not think the facts alleged in the affidavit of defence establish a gift from Alberta Albright to the defendant *inter vivos*.

Nor can the disposition of the property found in this box by the defendant be testamentary in character. It is void as a nuncupative will, and, if intended to be a testamentary disposition, it is revoked by the will of the decedent.

We have made a very careful examination of the many authorities relied upon by counsel for the defendant and cited in their briefs, a few of which we will review very briefly. Generally, the authorities to which we have been referred have been decided upon the facts proven in each particular case; but after examining the legal principles involved, we find they are in harmony with the cases to which we have referred. It was argued very strongly that Com. v. Crompton, 137 Pa. 138, was controlling. Particular mention was made of a sentence in the opinion of Mr. Justice McCollum, on page 147, wherein he says: "But a certificate of deposit is a subsisting chose in action and represents the fund it describes, as in case of notes, bonds and other securities, so that delivery of it as a gift constitutes an equitable assignment of the money for which it calls." This is undoubtedly true; but counsel overlooked the language of the fourth syllabus in this case, wherein it is held: "Where it is apparent from the evidence that an absolute and present gift of non-negotiable securities . . . is intended, a gift of them, valid against a volunteer, may be made by delivery to the donee without assignment or endorsement in writing, and without compliance with the forms required by the corporation."

What evidence do we have in the case at bar that there was "an absolute and present gift" of the certificates of deposit which the decedent left with the defendant locked in her tin box, the key remaining in custody and charge of the decedent herself?

In Jacques v. Fourthman, 137 Pa. 428, also strongly relied upon by counsel for the defendant, there was evidence of a gift which the Supreme Court held should have gone to the jury. What relevant evidence of a gift appears in the facts stated by the defendant in her affidavit of defence which could be submitted to a jury if this case went to trial? We are unable to discover any statement therein contained which could, under the pleadings in this case, be admissible to sustain the defendant's contention.

Hani v. Germania Life Ins. Co., 197 Pa. 276, decides that a parol gift may be made of a policy of life insurance by a physical delivery of the policy. In that case the mother presented a policy of life insurance to her daughter, the delivery of which was proven by two disinterested witnesses. It was also proven by the declaration of the donor, made in the hearing of another witness, after the delivery of the said policy to her daughter. Her intention as to the custody of, and property in, said policy was clear and free from doubt.

Funston v. Twining, 202 Pa. 88, holds that where one person gives to another the principal of a mortgage debt and delivers at the same time the bond and mortgage securing the debt, the gift is not rendered invalid by the fact that the donor says to the donee at the time of the delivery of the papers: "All I ask is that you pay me 4 per cent. interest while I live and then it is yours when I die."

Albright and Adams, Executors, etc., *v.* Lenhart.

The facts in Wise's Estate, 182 Pa. 168, strongly relied upon by counsel for the defendant to sustain her contention, differ very materially from the facts alleged in the affidavit of defence in the case at bar. The decedent knew what was in the box; he took the notes out, looked them over, put them back in the box, handed them to his wife, and told her everything was hers. "He said it was all hers; they had worked hard for it, and it was his wife's." This fact was proven by several witnesses. The box was given to the wife and was kept by her in the bureau drawer. The decedent did nothing in his lifetime to show that he in any way retained the custody of the box or its contents, while in the case at bar the decedent, during her lifetime, kept the key of the box, and two months after the declarations were made which are set forth in the affidavit of defence she made her last will and testament disposing of her property.

We do not find anything in the facts upon which the above quoted decisions, or in the facts upon which the decisions in other cases referred to us by counsel for the defendant, were based which can have any controlling authority in the case we are here to decide.

We think the facts relied upon by the defendant, as set forth in her affidavit of defence to establish title to the property left in her custody by the decedent, fail to establish either a gift to her *inter vivos* or a *donatio causa mortis*. We, therefore, direct that judgment be entered in favor of the plaintiffs and against the defendant for want of a sufficient affidavit of defence.

From William Jenkins Wilcox, Harrisburg, Pa.