## Hartman's Estate.

*Dewalt & Heydt,* for exceptant; *Butz, Rupp & Welty,* for estate.

IOBST, J., Dec. 3, 1928.—Before the auditor, one Anna Loux presented her claim for $2000. The auditor found against her, and an exception to this finding is now before us. The claim is based entirely upon a written instrument which reads as follows:

"Allentown, Pa., May 30, 1927.

*"Statement of Mr. F. S. Hartman.*

"In the presence of Dr. G. H. Boyer, and myself as his Power of Attorney, Mr. F. S. Hartman, who is of sound mind, has voluntarily declared, that in his last will which is deposited in a Lock Box, in the Second National Bank, Allentown, Pa., He previously willed One Thousand ($1000.00) Dollars, to Miss Anna Loux. He however now feels, of his own free will, that said Miss Anna Loux, on account of additional services during her period of employment, is entitled to Two Thousand ($2000.00) Dollars additional, to be given

her at once, in Bonds which are deposited in his Lock Box, in the Second National Bank, Allentown, Pa., or in an equivalent amount in money.

"(Sgd)   FRANCIS S. ( X ) HARTMAN   [Seal]
his
mark

"Attest   (Sgd)   G. H. Boyer.
"Attest   (Sgd)   Cyrus J. Dilcher.
"Power of Attorney."

This paper was never probated, and counsel for claimant is not contending that it is of testamentary character. The instrument provides that the bonds, or their equivalent in money, should "be given her at once," denoting that this should be done in the lifetime of Francis S. Hartman and not after his death. Francis S. Hartman died on June 4, 1927, testate. In his will, dated Aug. 8, 1922, he makes a bequest to Anna Loux as follows: "My cousin, Anna Loux, after the death of my wife, was engaged as my housekeeper, at such compensation as was mutually agreed and paid to her monthly, dating from June 23, 1919, and if she remains in my services without interruption until my death, I give, devise and bequeath unto her the sum of One Thousand ($1000.00) Dollars, but in the event, that for any reason whatsoever she leaves my employment before my demise, the above bequest of One Thousand ($1000.00) Dollars is revoked, and instead give and bequeath unto her the sum of One Hundred ($100) Dollars for each and every year she may be in my service at the time of my death, until such yearly sum shall reach the sum of Five Hundred ($500) Dollars which shall be the maximum sum she shall receive for her services." No evidence was produced before the auditor that the claimant was not paid for any and all services rendered by her to the decedent in his lifetime, nor that the paper upon which claim is now made was ever delivered to, or in the possession of, the claimant before the death of the testator, nor that she has any knowledge with reference thereto. There is, therefore, no evidence upon the record of any contractual relations between Anna Loux and the decedent other than that of the engagement by him of her as his housekeeper, and for the services so rendered the law presumes payment. The instrument before us was signed four days prior to Mr. Hartman's death. It was drawn at his request, and when executed was delivered to one Cyrus J. Dilcher, a witness thereon, and who acted as attorney-in-fact in the transaction of decedent's business for several months prior to his death. Mr. Dilcher testified that the paper was drawn up so as to secure the lockbox from the bank "for Mr. Hartman and have him take out the bonds himself." When Dilcher arrived at the banking house, the officials of that institution refused delivery of the lock-box to him, whereupon he returned the paper writing and says, "as much as I remember, I put it with Mr. Hartman's papers," where it evidently was found after the death of the testator. No other effort was made to get any bonds out of the lock-box between that day and the day of the death of the testator. True, the instrument is under seal and, therefore, imports a consideration, but before any liability attaches to the maker of a sealed instrument to the person designated as a payee therein or as beneficiary thereunder, there must be a delivery thereof, either to the person named therein or to some one for him or held by the maker as trustee for such person. Dilcher was the attorney-in-fact for the deceased and not the agent for Miss Loux. His directions were to secure the lock-box in order that the deceased might remove the bonds. Failure to secure the box made it impossible for Hartman to secure the bonds; so that there was neither a delivery of the instrument nor a delivery of the bonds or their equivalent in

money. It seems to us that the question here presented for our consideration narrows down to this—does the paper writing provide for a gift *inter vivos* or a *donatio mortis causa?* In Walsh's Appeal, 122 Pa. 177, 186, Mr. Justice Williams says: "A gift is more than a purpose to give, however clear and well settled the purpose may be. It is a purpose executed. It may be defined as the voluntary transfer of a chattel completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract. All gifts are necessarily *inter vivos,* for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift *inter vivos* and called *donatio mortis causa.* But by whatever name called, the elements necessary to a complete gift are not changed. There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift, a present title must vest in the donee, irrevocable in the ordinary case of a gift *inter vivos,* revocable only upon the recovery of the donor in gifts *mortis causa:* Wells *v.* Tucker, 3 Binney, 365; Nicholas *v.* Adams, 2 Wh. 17; 6 Bacon Ab., 162. The thing given must be susceptible of delivery. In the case of money on deposit or loaned out, the certificate of deposit or the bill, note or bond may be delivered properly endorsed, and it will confer on the donee an absolute title to the fund represented by it. But if there remains something for the donor to do before the title of his donee is complete, the donor may decline the further performance and resume his own. This is true of both classes of gifts, and there can be no good reason for distinguishing between them in this particular: Scott *v.* Lauman, 104 Pa. 593. As to gifts *inter vivos,* it was distinctly held in Bond *v.* Bunting, 78 Pa. 210, that an assignment or some equivalent instrument was necessary in order to pass title to a chose in action. The reason is that a gift is incomplete which does not clothe the donee with the rights and powers of ownership, and these rights and powers do not vest without a complete delivery: Michener *v.* Dale, 23 Pa. 59; Fross's Appeal, 105 Pa. 258." See, also, Hawn *v.* Stoler, 208 Pa. 610; Cooper's Estate, 263 Pa. 37; Kaufmann's Estate, 281 Pa. 519; Yeager's Estate, 273 Pa. 359; Oldfield's Estate, 72 Pa. Superior Ct. 340; Clapper *v.* Frederick, 199 Pa. 609; McHale, Admin'x, *v.* Toole et al., 258 Pa. 293.

The paper writing does not measure up to that which is necessary under the law to create a gift.

The remaining question is, did the paper writing clearly indicate that Hartman held the bonds or their equivalent in money in trust for the donee? We cannot so hold. Referring to Eshbach's Estate, 197 Pa. 153, 157, we find the law as follows: "Three things, it has been said, must concur to raise a trust, sufficient words to create it, a definite subject, and a certain or ascertained object; and to these requisites may be added another, viz., that the terms of the trust should be sufficiently declared:" Bispham's Equity, 109. Mr. Bispham further says (page 115): "When a settlor is possessed of the legal title to the subject-matter of the settlement, he may create a valid trust thereof, either by a declaration that he holds the property in trust or by a transfer of the legal title to the property to a third party upon certain trusts. In other words, he may constitute either himself or another person the trustee. If he makes himself trustee, no transfer of the subject-matter is necessary." In Smith's Estate, 144 Pa. 436, Mr. Justice Clark, speaking for the court, says: "If the declaration (of a trust) be in writing, it is not essential, as a general

rule, that it should be in any particular form. It may be couched in any language which is sufficiently expressive of the intention to create a trust."

The instrument before us indicates that the bonds should be delivered in his lifetime, and nowhere states that the decedent was holding them for the claimant, to be delivered after his death. We come to the conclusion that there was no delivery, either of the paper writing or the bonds or their equivalent in money therein referred to, and, therefore, no valid gift of them or it to the claimant, and that there was no trust created by the decedent in favor of her. Possession of the bonds or the equivalent in money was not parted with. The decedent's intention to have them delivered might have been abandoned and his directions countermanded. They were his property while he lived, and as the direction was not a testamentary one, it became inoperative at his death. It was a mere desire and direction for an act to be performed in his lifetime, which expires with him: Campbell's Estate, 7 Pa. 100, 102. The exceptions to the auditor's report must, therefore, be dismissed.

### Decree of court.

Now, Dec. 3, 1928, the exceptions to the auditor's report in the above-entitled estate, filed as of Sept. 21, 1928, are dismissed, at the cost of the exceptant. The findings and conclusions of the auditor are confirmed.

From Edwin L. Kohler, Allentown, Pa.